## JOHN McEWAN v. CHARLES ZIMMER.

*Courts—Service of process—International comity.*

Service of process beyond the jurisdiction of the court which issued it, cannot oblige the party served to appear and defend in that court.

The judgment of a Canadian or any foreign court upon service of its process made in Michigan, is not binding on a defendant who refused to recognize its jurisdiction; and it will not support an action in the State courts.

Error to Wayne. Submitted April 17. Decided June 4.

Assumpsit on a judgment. Plaintiff brings error.

*Ed. E. Kane* for plaintiff in error. International comity binds courts in the United States to recognize and enforce the judgments of the Canadian courts, *Kennedy v. Earl*, 2 Swanst., 326; *Boucher v. Rawson*, Cases temp. Hardwicke, 89; *Roach v. Garvan*, 1 Ves. Sr., 157; *Henderson v. Henderson*, 6 Ad. & El. (N. S.), 288; *Ferguson v. Mahon*, 11 Ad. & El., 179; *Scott v. Pilkington*, 2 B. & S., 11, 41; *Castrique v. Imrie*, 8 C. B. (N. S.), 405; Story's Confl. Laws, §§ 603, 608; 2 Kent's Com., 121; *Cummings v. Banks*, 2 Barb., 605; *Monroe v. Douglas*, 4 Sandf. Ch., 181; *Bank v. Harding*, 5 Ohio, 545; *Rankin v. Goddard*, 54 Me., 33: 55 Me., 391; *Messeir v. Amery*, 1 Yeates (Pa.), 541; *Rapelje v. Emery*, 2 Dal., 233; *Barrow v. West*, 23 Pick., 272; *Lazier v. Westcott*, 26 N. Y., 150; a foreign judgment is *prima facie* evidence of indebtedness under the common counts, 3 Com. Dig., Dett, (A 2); *Bartlett v. Knight*, 1 Mass., 405; *Philips v. Hunter*, 2 H. Bl., 410; *Galbraith v. Neville*, 5 East, 475, note; *Hall v. Odber*, 11 East, 123; *Taylor v. Bryden*, 8 Johns., 178; *Pawling v. Bird's Ex'rs*, 13 Johns., 206.

*Prentis & Fox* for defendants in error. A judgment is not valid unless the court has jurisdiction of the person of the defendant, (*Borden v. Fitch*, 15 Johns., 141; *People v. Dawell*, 25 Mich., 267; *Shumway v. Stillman*, 4 Cow., 292; *Andrews v. Herriot*, id., 508), which can be obtained only by service within its jurisdiction of notice of the pendency of the action, *Hall v. Williams*, 6 Pick., 232; *Andrews v. Montgomery*, 19 Johns., 162; *Starbuck v. Murray*, 5 Wend., 154; Freeman on Judgments, §§ 564, 588; a court of one sovereignty cannot subject persons or property in another to the direct effect of its judgments, orders or decrees; *Wood v. Parsons*, 27 Mich., 159; a special plea of want of jurisdiction is not necessary where the record shows it, *Bradshaw v. Heath*, 13 Wend., 407.

COOLEY, J. This was an action upon a judgment purporting to have been rendered by the county court of county Essex, in the province of Ontario, Dominion of Canada, in favor of McEwan against Zimmer. The only question which the record presents is one of jurisdiction in the county court of Essex to render the judgment, and this arises upon the service which was made on the defendant. Zimmer, it appears, was proceeded against as a non-resident under certain provisions of the statutes known as the Consolidated Statutes of Upper Canada, of which the sections which bear upon the case are the following:

"43. In case any defendant being a British subject, is residing out of Upper Canada, the plaintiff may issue a writ of summons in the form (A) No. 3, which writ shall bear the indorsement contained in the said form, purporting that such writ is for service out of Upper Canada, and the time for appearance by the defendant shall be regulated by the distance from Upper Canada of the place where the defendant is residing, having due regard to the means of, and necessary time for postal or other communication. (19 V., c. 43, s. 35.)

"44. Upon the court or judge being satisfied that there is a cause of action which arose in Upper Canada, or in respect of the breach of a contract made therein, and that the writ has been personally served upon the defendant, or that reasonable efforts have been made to effect personal service thereof upon the defendant, and that it came to his knowledge, and either that the defendant willfully neglects to appear to such writ, or that he is living out of Upper Canada, in order to defeat or delay his creditors, such court or judge may from time to time direct that the plaintiff shall be at liberty to proceed in the action in such manner and subject to such conditions as to such court or judge (having regard to the time allowed to the defendant to appear being reasonable and to the other circumstances of the case) may seem fit; but the plaintiff, before obtaining judgment, shall prove the amount of the debt or damages claimed by him in such action, either before a jury on an assessment in the usual mode, or by reference in the manner hereinafter provided, according to the nature of the case, as such court or judge may direct. (19 V., c. 43, s. 35.)

"45. In any action against a person residing out of Upper Canada and not being a British subject, the like

proceedings may be taken as against a British subject resident out of Upper Canada, except that the plaintiff shall, instead of the summons mentioned in the forty-third section, issue a writ of summons according to the form (A) No. 4, and shall in manner aforesaid serve a notice of such last mentioned writ upon the defendant, which notice shall be in the form also contained in the said form No. 4; and such service or reasonable efforts to effect the same, shall be of the same force and effect as the service or reasonable efforts to effect the service of a writ of summons in any action against a British subject resident abroad, and by leave of the court or a judge, upon their or his being satisfied by affidavit as aforesaid, the like proceedings may be had and taken thereupon." (19 V., c. 43, s. 36.)

Zimmer, it was conceded, was not a British subject, and the record of the judgment in the county court shows that the only service made upon him was made at the city of Detroit in this State. It also shows that he did not in any manner respond to the service, and that judgment was taken against him by default. No property appears to have been attached in the province, and no jurisdiction to render the judgment is claimed unless the service in Detroit conferred it. The only question the record presents may therefore be stated as follows: Whether it is competent for a foreign court to make service of its process in this State, and on the authority of such service to proceed to judgment against a party who refuses to recognize the jurisdiction.

We had not supposed until this suit was brought to our attention that such a jurisdiction could seriously be contended for. The rule laid down by Judge Story in his Conflict of Laws has been supposed to be of universal acceptance, that "no sovereignty can extend its process beyond its own territorial limits, to subject either persons or property to its judicial decisions. Every exertion of authority of this sort beyond this limit is a mere nullity, and incapable of binding such persons or property in any other tribunals." Confl. of Laws, § 539. Mr. Wharton repeats this rule as one not questioned, Confl. of Laws, § 712; and it is believed to have been recog-

nized in every case arising in the courts of this country in which the exact point has been presented. If any case is an exception, it has escaped our attention.

It is urged, however, that the rule in Great Britain and the British provinces is otherwise, and that comity requires that we recognize and accept the rule of jurisdiction that prevails where the judgment was rendered. The obligations of international comity, we trust, will never be questioned in this State, especially when they are invoked in behalf of our neighbors of the Dominion, with whom our relations are so intimate, and it may be added, so friendly and cordial. We should certainly never have the assurance to demand from them more than we would freely and voluntarily concede to them. True comity is equality; we should demand nothing more and concede nothing less.

The English decisions having direct bearing on the question are not very numerous. *Douglas v. Forrest,* 4 Bing., 686, was an action in England upon a Scotch judgment, obtained without personal service, and after notice to the defendant by the process called "horning," which may or may not have ever come to his knowledge. The validity of the judgment was recognized, and the action sustained. But an inspection of the case and a reading of the opinion of Chief Justice Best will disclose the fact that the rule as laid down by Mr. Justice Story in his treatise on the Conflict of Laws is in no manner assailed or questioned. The defendant was executor of a Scotch estate, and it was in that capacity that he was sued; and the jurisdiction was supported on the express ground that the estate was within the jurisdiction of the Scotch court, and that the defendant himself owed allegiance to that country. "To be sure," says the Chief Justice, "if attachments issued against persons who never were within the jurisdiction of the court issuing them, could be supported and enforced in the country in which the person attached resided, the legislature of any country might authorize their courts to decide on the rights

of parties who owed no allegiance to the government of such country, and were under no obligation to attend its courts, or obey its laws. We confine our judgment to a case where the party owed allegiance to the country in which the judgment was so given against him, from being born in it, and by the laws of which country his property was, at the time those judgments were given, protected. The debts were contracted in the country in which the judgments were given, whilst the debtor resided in it."

In *Becquet v. MacCarthy*, 2 B. & Ad., 951, the judgment in question was rendered in one of the British colonies, and by the law of the colony if the defendant was absent and could not be personally served, the service was permitted to be made on the King's Attorney General for the colony. It was so made in that case—the defendant, who was an official lately domiciled in the colony, being then absent. The substituted service was sustained as sufficient. It was made within the jurisdiction of the court, and the case is therefore not analogous to the present, and we have no occasion either to approve or question it. Our laws provide in some cases for a substitute for personal service, where the party is within the jurisdiction or only temporarily absent; and where the substitute is such as with reasonable certainty will bring the proceeding to the knowledge of the respondent, it is perhaps competent to give to give to such service the full effect of that made upon a person. But no such question is now before us.

In *Bank of Australasia v. Nias*, 16 Q. B., 717, the defendant, who was a stockholder in a joint stock company in New South Wales, was sued in England on a liability as such stockholder which it was claimed was established by a judgment against the chairman of the company in New South Wales, under a statute which permitted the chairman to be sued as representative of the company. The statute was sustained and the action was supported. Lord Campbell in his opinion

declares that the statute was passed for the bene-
fit of the company, and that there was nothing at all
repugnant to the law of England, or to the principles
of natural justice, in enacting that actions upon contracts
made by the company, instead of being brought individ-
ually against all the stockholders, should be brought
against the chairman whom they had appointed to rep-
resent them.    The case is treated as one in which the
parties, by accepting the benefits of a statute, had con-
sented to certain forms of procedure for which it pro-
vided.

A case more important to the present discussion is
that of *Schibsby v. Westenholz*, L. R. 6 Q. B., 155.   The
action in that case was upon a French judgment,
obtained without personal service of process, under a
statute not differing essentially from the statute of
Upper Canada which is supposed to sustain the judg-
ment now in question.   The only difference of moment
between that case and the present is, that there the
contract on which the French court gave judgment was
an English contract, while in this case the judgment
was given for services performed by the plaintiff in
Canada, and possibly it may be claimed that the implied
contract to pay for these services was a Canada con-
tract, though the defendant was not in Canada at the
time.   Whether this difference has any legal significance
will be considered further on.   Putting this circumstance
aside, the two cases are strictly analogous, and it is
fortunate that in passing upon the force that should be
given to a Canadian judgment under the circumstances
we are afforded the light of a decision by one of the
courts at Westminster on the very point in dispute.

It should be stated here that the statute of Upper
Canada was a substantial reproduction in that province
of the provisions of the English common law procedure
act (1852), which in terms permit judgment to be taken
against persons out of the realm on a service of process
made abroad.   The case was therefore one in which it

might be urged with great force that comity required that the courts in England should recognize the validity of judgments obtained in France upon a service precisely analogous to that which the English statute made sufficient to support a judgment in that country. BLACKBURN, J., in delivering the opinion of the court proceeded to declare as the true principle on which the judgments of foreign tribunals are enforced in England, that stated by PARKE, B., in *Russell v. Smyth*, 9 M. & W., 819, and repeated in *Williams v. Jones*, 13 M. & W., 633, that the judgment of a court of competent jurisdiction over the defendant imposes a duty or obligation on the defendant to pay the sum for which judgment is given, which the courts of England are bound to enforce, and that consequently anything which negatives that duty, or forms a legal excuse for not performing it, is a defense to the action, proceeds to say: "We were much pressed on the argument with the fact that the British legislature has, by the Common Law Procedure Act (1852) conferred on our courts a power of summoning foreigners, under certain circumstances, to appear, and in case they do not, giving judgment against them by default. It was this consideration principally which induced me at the trial to entertain the opinion which I then expressed and have since changed. And we think that if the principle on which foreign judgments were enforced was that which is loosely called "comity," we could hardly decline to enforce a foreign judgment given in France against a resident in Great Britain under circumstances hardly, if at all, distinguishable from those under which we, *mutatis mutandis*, might give judgment against a resident in France; but it is quite different if the principle be that which we have just laid down. Should a foreigner be sued under the provisions of the statute referred to, and then come to the courts of this country and desire to be discharged, the only question which our courts could entertain would be whether the acts of the British legislature,

rightly construed, gave us jurisdiction over this foreigner; for we must obey them. But if, judgment being given against him in our courts, an action were brought upon it in the courts of the United States (where the law as to the enforcing foreign judgments is the same as our own), a further question would be' open, viz.: not only whether the British legislature had given the English courts jurisdiction over the defendant, but whether he was under any obligation which the American courts could recognize to submit to the jurisdiction thus created." And further on he says that the real question which the court of the United States must pass upon in the supposed case would be this: Can the island of Great Britain pass a law to bind the whole world?—a question which he ventures to answer without hesitation in the negative.

But for a single remark in this opinion by Mr. Justice Blackburn, it should as it seems to us, be accepted on all sides as covering completely the present case. The remark referred to is in the nature of a suggestion, that if at the time when the obligation was contracted the defendants were within the foreign country, but left it before the suit was instituted, perhaps the laws of the foreign country ought to bind them. The remark was not relevant to any facts then before the court, nor in our opinion does the present case require us to consider how far the suggestion has force. This defendant was not in Canada when the demand accrued, and in no manner has he submitted himself to its laws unless he can be said to have done so in employing the services of the plaintiff in that country. If we might assume—which we cannot under the circumstances—that the supposed contract was a Canada contract, it is not by any means clear to our minds that the fact should affect the decision. If the obligation on the courts of one country to enforce the judgments of another be grounded in comity, it ought to appear that under corresponding circumstances it would be expected in this

State that the courts of Canada would enforce a judgment given in Michigan on a Michigan contract against a resident in Canada who was never served with process except in the Dominion. So far is it from being the fact that such an expectation would exist, that the courts of this State are not permitted, by virtue of any statute or of any principles supposed to be derived from the common law to render any such judgment; and should it by inadvertence or by mistake of law be entered up by any court of this State, any other court, and indeed the party defendant himself, might treat it, so far as it assumed to establish a personal demand against him, as an absolute nullity. No better illustration of the views held by our own courts upon this subject can be instanced than the case of foreclosure suits in equity against non-resident mortgagors where, although the case may proceed to decree on notice made by publication, or personally served in a foreign jurisdiction, yet the notice is never accepted as the full substitute for service of process within the State, and though the case goes to a decree for the sale of the land, a personal decree against the party liable for the mortgage debt is never permitted to be taken upon such notice. *Lawrence v. Fellows*, Walk. Ch., 468; *Outhwite v. Porter*, 13 Mich., 533; *Tyler v. Peatt*, 30 Mich., 63. We may then dismiss comity from consideration as constituting any basis for the enforcement of the judgment now before us. We should certainly, *mutatis mutandis*, not expect it to be enforced. And we may add that in the still more pointed case of the attachment of lands of a non-resident as the commencement of a suit to collect a debt, though the statute provides for the case proceeding to judgment against the defendant on proof of the statutory notice by publication, yet the judgment is not regarded as establishing a personal demand against the defendant, and we should neither expect it to be enforced as such abroad, nor enforce it ourselves. This is so well understood in this State that the point is never mooted.

On the other hand, if the obligation to enforce a foreign judgment is to be rested on the duty or obligation of the defendant to pay the sum for which the judgment was given, as Mr. Baron Parke and Mr. Justice Blackburn suppose, then it is important to know from what such duty or obligation springs. It is certain that it cannot spring from the mere fact that some court has assumed to render a judgment, but the proceedings anterior to the judgment must have been such as fairly imposed upon the party sued the obligation to appear and make his defense to the demand set up, if any he had; and if under the circumstances he was fairly entitled to treat any notice of the suit which may have been given him as unwarranted, and to disregard it, then it seems plain that no obligation to recognize the conclusions of the court in the suit could possibly arise. The question, then, seems to be narrowed to this: whether the service of process beyond the jurisdiction of the court issuing it, can impose upon the party served the obligation to appear in the suit and make there his defense if he has any? If this question must be answered in the affirmative as regards a judgment rendered in Canada, it must receive a like answer when it contemplates a judgment rendered on a like service in New Zealand, or in one of the colonial courts of the Dutch East Indies. The question, therefore, is not one to be disposed of on a consideration merely of how this defendant might be affected; but it suggests the possible cases of citizens of this country proceeded against in the remotest borders of civilization, on claims which may or may not have a foundation in justice, but which become established claims by default in making answer to a suit upon them.

Now the service of process is for the purpose of notifying the defendant, and giving him a fair opportunity to defend. But the service of process in Michigan, which requires one to appear and answer to a demand in a foreign country would in general be of no value whatever, because a defense abroad would either be practically

impossible, or would be so expensive as to exceed in cost the importance of the demand. It may therefore justly and emphatically be declared that such service would give no fair opportunity to defend, and consequently could not accomplish the purpose of process. Were the doctrine accepted which would permit it, it might reasonably be anticipated that fictitious claims would be asserted abroad against Americans who for business or pleasure had visited foreign countries, and would become established claims by default in a defense which a party wrongfully charged could not afford to make. We think the doctrine has no foundation in reason, or in the principles of international law or international comity.

We refer, as supporting these general views, to *Bischoff v. Wethered*, 9 Wall., 812, and *Wood v. Parsons*, 27 Mich., 159; also to *People v. Dawell*, 25 Mich., 267, where the general subject received some attention.

We find no error in the judgment and it must be affirmed with costs.

The other Justices concurred.