1834.

ISENHART
v.
BROWN.

IsENHART and others *v.* HACHALIAH BROWN and another, executors of GILBERT BROWN deceased, *et al.*

———

Widow had articles of personalty bequeathed her; and took possession of them, with the knowledge and assent of the executor. He afterwards sued her for the same; but submitted to a nonsuit. In making up his accounts, he charged the fees and expenses paid for the suit, which were allowed by a master but disallowed by the court.

Voluntary bonds given by a testator will be operative as debts against the estate, unless he was *non compos mentis*, or the bonds were obtained by fraud, or undue influence; but they will have to be postponed to bonds and simple contract-debts arising upon valuable consideration. Yet they have a preference of legacies.

Mere secresy in the manner of giving voluntary bonds is not enough to impeach them.

Interest not allowed upon arrears of an annuity.

The produce accruing upon a specific legacy belongs to the legatee; but if the articles be unproductive and detained, no interest can be had out of the estate for the detention; if improperly withheld, the remedy is against the executor only.

A specific legacy does not carry interest.

———

For a statement of this case, the reader is referred to 1st vol. page 411.

November 27 1834.

It now came up again on exceptions to the master's report, upon the reference had by virtue of the decretal order before made.

*Executor's Accounts. Bond. Specific Legacy. Interest.*

The master reported, amongst other things, that Hachaliah Brown had in his hands belonging to the estate, including interest charged to him, six thousand two hundred and eighty-seven dollars and ninety-two cents; that three bonds of five hundred dollars each, executed by Gilbert Brown, one to the sister, another to the son and the third to the mother of Hachaliah Brown ought not to be allowed as just debts against the estate; that the personal estate was sufficient to comply with the provisions relative to the investment of the fifteen hundred dollars, that the real estate (subject to the widow's rights) was enough for the payment of debts; and that there was due to the widow:

1834.

ISENHART
v.
BROWN.

| | | |
|---|---|---|
| For arrears of interest upon the $1500 . . | $2001, 87 |
| For the value of the articles enumerated in the codicil and not delivered . . . . | 306, 51 |
| Principal and interest of the bond . . . | 978, 33 |
| | $3286, 71 |

Hachaliah Brown had, theretofore, brought an action of trover against the widow in order to recover the household property bequeathed to her. It had come to trial when the plaintiff submitted to a nonsuit. His costs of this suit at law, amounting to one hundred and forty-three dollars and eighty-two cents, had been charged by him and allowed by the master as a proper charge against the estate.

Exceptions were taken by the widow to the allowance of the costs in the trover suit.

And Hachaliah Brown took six exceptions to the master's report.

1. Because the master had reported a balance of six thousand two hundred and eighty-seven dollars and ninety-two cents in his hands, whereas he ought to have only reported a balance of thirteen hundred and thirty dollars and sixty-one cents and interest.

2. Because the master had rejected the three bonds.

3. Because he had reported the estate sufficient to comply with the provisions relative to the investment of the fifteen hundred dollars.

4. Because he had reported there was due to the widow for arrears of interest upon the fifteen hundred dollars the sum of two thousand and one dollars and eighty-seven cents.

5. Because he had reported there was due to the widow, on account of the articles of personal property enumerated in the codicil, three hundred and six dollars and fifty-one cents and for the principal and interest of the bond nine hundred and seventy-eight dollars and thirty-three cents and that the aggregate amount due to the widow was three thousand two hundred and eighty-six dollars and seventy-one cents; whereas the master ought to have reported that the widow was not entitled to the said several sums.

6. Because he had stated the rights and interests of the widow erroneously.

And these exceptions now came before the court.

1834.

ISENHART
v.
BROWN.

Mr. *A. L. Mc'Donald*, for the complainant.

Mr. *W. N. Dyckman*, for the widow Elizabeth Brown.

Mr. *P. A. Jay*, for the defendant Hachaliah Brown.

THE VICE-CHANCELLOR :—1. As to the exception taken by the widow Elizabeth Brown. This relates to the costs, counsel fees and expenses of the action of trover brought by the executor against the widow, amounting to one hundred and forty-three dollars and eighty-two cents. The executor failed in the action; and the master has allowed it to be charged against the estate. It appears to me it ought not to be so charged.

*May* 18,
1835.

Although, in strictness of law, the executor had a right to the possession of all the personal property left by the testator and the widow could not take what was specifically bequeathed to her without his assent, inasmuch as it might be necessary for the payment of debts, yet if he were satisfied that no such necessity existed, it was competent for him to assent to her retaining the possession; and having once assented, he should not afterwards have brought the action against her. The defence which she had set up was that one or both of the executors had assented; and after some proof was gone into on her part upon the trial, in order to make out the fact, the executors submitted to a nonsuit. I think it is apparent that there was no necessity for requiring her to give up the articles of personal property which had been left to her by the will. The attempt can hardly be justified. It was certainly not for her benefit or the advantage of the legatees generally; and he must bear the expense himself. This exception is well taken.

2. Then, as to the exceptions taken by the defendant Hachaliah Brown. These are of more importance.

The first and second depend upon one question, namely,

1834.

ISENHART
v.
BROWN.

whether three certain bonds given by the testator were valid as debts against the estate? The executor alleges his having paid them and he claims a right to charge the amount against the estate. If he be permitted to do this, it will lessen the amount which the master has reported as the balance due from him—the master having disallowed the bonds. They are voluntary bonds, one of them was given to the sister of the executor, a second was in favor of his son, and the remaining one was given to his mother; each of these bonds was for five hundred dollars payable at or immediately after the death of the obligor and all bearing date the twenty-fifth day of May, one thousand eight hundred and twenty. The will was made previously, on the fifteenth day of June, one thousand eight hundred and eighteen, the codicil on the thirty-first day of July, one thousand eight hundred and nineteen, and the testator died on the twenty-seventh day of December, one thousand eight hundred and twenty.

These bonds, although voluntary and without valuable consideration, are nevertheless valid and operative as debts against the estate, unless they were obtained by fraud or undue influence or the testator had become *non compos mentis* at the time of giving them. This court, however, would not allow them to be paid in the course of administration to the prejudice of creditors having debts contracted for valuable consideration. The executor would be compelled to postpone such bonds even to simple contract debts: Ram on Assets, 277; but in respect to legacies, the bonds would have a preference: for it is said that a bond, however voluntary, transfers a right in the lifetime of the obligor, whereas a legacy arises from the will which takes effect only from the testator's death and therefore ought to be postponed to a right created in the testator's lifetime: *Jones* and *Powell*, ———— 1 E. Ca. Abr. 84.; *Cray* v. *Rooke*, Talbot's Cas. 156.; *Lechmere* v. *E. of Carlisle*, 3 P. Wms. 222; The Lady Cox's case, Ib. 339.

If these bonds then were invalid, it must have been because the testator was either of unsound mind at the time or there was some fraud or deception practiced upon him or some undue influence used to procure them. The testimo-

ny fails to make out any of these grounds. The evidence of the Reverend Mr. Haskell and of the widow, upon her examination as a party, are the strongest upon the subject of the testator's imbecility of mind ; and even they go no further than to shew him subject to severe attacks of illness and which, while they lasted, appeared to impair his mental as well as physical faculties. But these were of short duration, did not exceed two or three days, and upon proper medical treatment he would recover. Except at such times, he was perfectly competent to conduct his own affairs and to give directions in relation to the management and disposition of his property. There was indeed no mental incapacity ; and the bonds were given at times when he was able to go from home and not while labouring under any particular bodily suffering so as to affect his mind.

Nor is there any evidence of fraud or improper influence in obtaining the bonds in question, nor sufficient circumstances from which to infer either the one or the other. Secresy in the manner of giving the bonds is put forward for the purpose of raising a suspicion of some unfairness. This is not enough. Fraud and imposition must be made out by stronger evidence than this affords before the bonds can be impeached. As they are in the nature of testamentary gifts, they would be more likely to assume the appearance of secret transactions than ordinary bonds between debtor and creditor. The testator had a right to dispose of his property by giving bonds or by deeds of gift, as well as by will; and he was also at liberty to prefer Brown's family, as objects of his bounty, to his other relations, notwithstanding he made a will by which he had intended to leave them a portion of his estate which these bonds tend to disappoint. And without some proof to impeach the bonds, they must be permitted to have this effect : *Blackborn* v. *Edgley*, 1 P. Wms. 606.

If all proper parties were before the court, I should not be warranted by the evidence, as it now stands, in decreeing the bonds to be cancelled. I must consider the executor justified in paying them, provided such payments do not prejudice the rights of any person standing in the light of a creditor and entitled to a preference. The law on this sub-

44

ject, with respect to creditors, has already been stated; and I consider the widow as coming within the principle and entitled to be first satisfied, not only in regard to the provision made for her by the will and codicil—her right to which has already been passed upon and, until altered, must be taken as the law of the case—but also in relation to the bond, taken in the name of Hachaliah Brown for her benefit. It is very evident the testator intended to give her bond the preference. His object was to make a more ample allowance to her and place her upon the same footing as the provision by the will; and those who took the other bonds must I think have understood at the time that whatever rights they thereby acquired were to be subordinate to those of the widow. No injustice will be done in giving her the preference.

Upon an understanding that the sanctioning of the three bonds is not to affect the claims of the widow, the first and second exceptions taken by the defendant Hachaliah Brown are allowed.

I apprehend this likewise disposes of the third exception: for there must be a re-stating of the accounts and the result will then show whether the personal estate is sufficient to enable the executors to comply with the provisions of the will relative to the placing out at interest the sum of fifteen hundred dollars for the use of the widow.

The fourth exception relates to the amount reported to be due to the widow for arrears of interest on the fifteen hundred dollars. The objection to this is that the master ought not to have allowed any interest to be due upon this sum, much less interest upon arrears of interest. The decretal order of the ninth day of April, one thousand eight hundred and thirty-three has already determined that she is entitled to the interest upon this sum of fifteen hundred dollars from the death of the testator, provided the personal estate amounted to the sum and there was sufficient other property to pay debts; and I understand from the master's report there is a sufficiency for these purposes. The arrears, therefore, amounting to one thousand three hundred and sixty-five dollars are properly allowed by the master; and the only question is as to interest upon such arrears,

computed by the master to amount to six hundred and thirty-six dollars and eighty-seven cents. I am of opinion this latter sum cannot be allowed. As I look upon this provision in the light of an annuity, the weight of authority is against allowing the widow interest upon arrears. The case of *Tew* v. *Earl of Winterton*, 3 Bro. C. C. 489. and in 1 Ves. Jr. 451. is directly in point; and interest on the arrears of an annuity was refused by Lord Hardwicke in *Bedford* v. *Coke*, 1 Dick. 178.; *Bignal* v. *Brereton*, Ib. 278; *Anonymous*, 2 Ves. Sen. 661. See also *Anderson* v. *Dwyer*, 1 Sch. & Lef. 301; 2 Roper on Leg. 249; Williams on Executors, 879. It may be difficult to reconcile all the cases upon this subject. Some of them acknowledge it to be discretionary with the court, under special circumstances, to give interest: 1 Hov. Supp. 126, 127; Belt's Supp. 293; Ram on Assets, 138. However, there are no special circumstances in this case to require the allowance of interest on the arrears of interest due upon the fifteen hundred dollars; and the master's report in this particular must be corrected.

The fifth and only other exception which requires any notice, relates to the allowance of three hundred and six dollars and fifty-one cents as being the value of certain articles of personal property specifically bequeathed to the widow and interest upon such value and the principal and interest of the bond for five hundred dollars given to the defendant Hachaliah Brown for her use. I see no objection to the interest on the bond as computed and allowed by the master: it being for a sum certain payable at a specified time and, like a pecuniary legacy, carrying interest from the time it is deemed payable.

I have, however, doubts as to the propriety of allowing interest upon the value of the personal property bequeathed to the widow specifically, which she did not happen to receive. Whatever produce accrues upon a specific legacy belongs to the legatee, because it is considered as separated from the general estate and appropriated from the time the testator died. Thus, where there is a specific legacy of stock, the dividends belong to the legatee. So, if animals are specifically given, the natural increase or product follows the ownership: 2 Roper on Leg. 188; Williams on E. 876;

1834.

ISENHART
v
BROWN.

but if inanimate **and** unproductive articles of property are bequeathed and **not** delivered, it does not follow that the legatee is entitled to interest upon their value out of the estate by way of recompense for the detention—if improperly withheld, the remedy is against the executor personally. The case of *Apreece* v. *Apreece,* 1 Ves. & B. 364, shows that a specific legacy (as a ring, where the value is fixed by the testator) does not carry interest. I consider the master should not have allowed the one hundred and forty-three dollars and fifty-one cents for interest upon the one hundred and sixty-three dollars; and in this particular his report must likewise be corrected.

There must be a reference back to the master to amend his report accordingly; and the question of costs and all further directions are reserved.