## LUTZ ET AL. v. KELLY ET AL.

1. **Jurisdiction:** NON-RESIDENT: PERSONAL JUDGMENT. Service by publication or by personal service without the State, upon a person who is not a citizen or resident of the State, confers no jurisdiction by which a personal judgment can be rendered.

2. **Judgment:** ALTERATION OF RECORD: PRESUMPTION. The alteration of the record of a judgment, made under circumstances which rendered it probable that it must have come to the knowledge of the parties, or their attorneys, will be presumed to have been legitimately made before the approval of the record by the judge.

*Appeal from Clarke Circuit Court.*

FRIDAY, DECEMBER 7.

IN 1859 Kelly & Harding commenced an action against Joseph and Jane A. Harper for the recovery of $1,900 due on a promissory note and the foreclosure of a mortgage executed to secure it. Joseph and Jane Harper resided in Plattsmouth, Nebraska. On the 28th day of February, 1859, they were personally served with notice by the sheriff of Cass county, Nebraska. Afterwards an affidavit of non-residence was filed, and they were served with notice by publication. On the 22d day of October, 1859, judgment was rendered as follows:

"Kelly & Harding  
  v.  } Foreclosure.  
Joseph Harper and Jane Harper. 

"Comes now James Rice, attorney for the plaintiffs in the above entitled cause, and makes application that a default be

entered against the defendants. Whereupon, it appearing to the court that the defendants had been legally served with notice, all things considered, the papers fully inspected and the court well advised in the premises, it is ordered and adjudged by the court that the plaintiffs have and recover of the defendants the sum of $1,937.90, with interest at the rate of ten per cent per annum from the rendition of this judgment, and their costs herein expended, taxed at fifteen dollars.

"And it further appearing to the court that the said defendants executed to the plaintiffs a mortgage upon the following described premises to secure the payment of the above sum of money, viz: Lots Nos 6 and 9, in block No. 17, in the town of Osceola, Clarke county, Iowa. It is therefore ordered and adjudged that the equity of redemption of the defendants in and to the above described premises be and the same is forever barred and foreclosed, and that the foregoing judgment be and constitute a lien upon the above lands, and that a special execution issue for the sale of said mortgaged premises."

The latter part of this judgment appears upon the record canceled by lines drawn around and across it with a pen as above indicated. On the 24th day of November, 1859, a general execution issued on this judgment. On the same day this execution was levied upon lots numbers six and nine, in block seventeen, in the town of Osceola, the lots described in the mortgage, and on the 31st day of December, 1859, these lots were sold to Kelly & Harding, plaintiffs in the judgment, for $331.10. Afterwards a sheriff's deed was duly executed pursuant to said sale. On the 5th day of September, 1860, a certified copy of this judgment was procured, authenticated by the certificate of the clerk of the court, and by that of Hon. E. H. Sears, judge of the district. This certified judgment does not contain the part embraced in the cancellation. On the back of the petition in Kelly & Harding v. Harper is the following: "Judgment for amount of note, Oct. 22, 1859."

On the 11 day of October, 1870, Joseph and Jane Harper,

for the expressed consideration of $1,000, conveyed said lots to Jefferson H. Lutz, by deed of general warranty. On the 26th day of December, 1870, Lutz commenced an action for the recovery of the lots. Afterwards he conveyed an undivided one-half thereof to R. B. Parrott, and he intervened, claiming his interest. On the 10th day of June, 1873, an amendment to the petition was filed, alleging the death of George H. Harding and making his legal representatives parties defendant. The defendants answered, denying that plaintiffs are entitled to the possession of the property and pleading the statute of limitations. The plaintiffs replied, alleging that defendants have at all times been non-residents of the State of Iowa. The cause was tried as a case in equity, and a decree was entered quieting the title of defendants. The plaintiffs appeal.

*Stuart Bros.*, for appellants.

*James Rice* and *Henry Stivers*, for appellees.

DAY, CH. J.—I. The statute of limitations does not bar plaintiff's action. The sheriff's deed was executed on the 13th day of February, 1861. Within ten years from that time, on the 26th day of December, 1870, this action was commenced by placing the original notice in the hands of the sheriff for service. Code, § 2532. Besides, the evidence showed that, since the execution of the sheriff's deed, the defendants have never been residents of Iowa. The statute of limitations does not run in their favor. *Heaton v. Fryberger*, 38 Iowa, 185.

II. If we eliminate from the judgment against Joseph and Jane Harper the portion included in the cancellation, we have a mere personal judgment for $1,937.90. At the time of this judgment the Harpers were non-residents of this State. They were personally served in Nebraska, and also by publication as non-residents. Upon such service the District Court of Clarke county acquired no jurisdiction of their persons, and a personal judgment against them is void. On this subject, in Story on

1. JURISDICTION: non-resident: personal judgment.

Conflict of Laws, Section 539, it is said: "No sovereignty can extend its process beyond its own territorial limits, to subject either persons or property to its judicial decisions. Every exercise of authority of this sort beyond this limit is a mere nullity, and incapable of binding such persons or property in any other tribunals." In *Weil v. Lowenthal*, 10 Iowa, 575, it is said: "The constitution of our State does not give, nor can the legislature by any enactment confer upon the District Court jurisdiction over the person of a citizen of another State." In *Darrance v. Preston*, 18 Iowa, 396, it is said: "Our statute provides for the service of an original notice outside of the State (Revision, section 2815, subdivision 4, and section 2835), as well as upon non-residents by publication (Revision, section 2831 to section 2834). But it is clear upon principle, as has been recognized and determined by this court, that such service, by publication or by personal service without the State, upon a person who is not a resident or citizen of this State, confers no jurisdiction either as to the person or the property of such non-resident." Such a service simply authorizes the court to conclude the rights and interests of a non-resident in property over which the court, by process of attachment or otherwise, has acquired jurisdiction *in rem*, and to subject such property to sale, in satisfaction of an amount found due. It follows that the judgment in question, considered as a mere personal judgment, is a nullity, and that the sale of real estate thereunder was unauthorized and illegal.

III. This brings us to a consideration of the principal question involved, the effect of the cancellation of the judgment. There is no proof as to the time when this cancellation was made. If the determination of the question depended merely upon legal presumption, it would not be at all free from difficulty. In a note to section 564 of Greenleaf on Evidence, Vol. 1, it is said: "The cases on this subject are not in perfect harmony, but they are understood to fully support the doctrine in the text. They all agree that where any suspicion is raised as to the genuineness of an altered instrument, whether it be apparent upon inspection, or made so by extraneous evidence, the party

*2. JUDGMENT: alteration of record: presumption.*

producing the instrument and claiming under it is bound to remove the suspicion, by accounting for the alteration. It is also generally agreed that, inasmuch as fraud is never to be presumed, therefore, if no particular circumstances of suspicion attach to an altered instrument the alteration is to be presumed innocent, or made prior to its execution." See authorities cited in this note. The principle that a party claiming under an instrument is bound to remove suspicion by accounting for the alteration is not applicable to this case, for here the defendants do not claim under the alteration, but they claim notwithstanding it. In other words, their position is that the alteration was not properly made, and that it should have no force. Upon the other hand, no particular circumstances of suspicion attach to the mere cancellation of a part, or the alteration of a record of judgment. These judgments are written out by the clerk, and are afterward usually read over for the approval and signature of the presiding judge. It frequently happens that the judgment does not meet the approval of the judge, and it is then changed by cancellation or addition, or both, until it becomes satisfactory. When a record presents the appearance of such change, inasmuch as an alteration of it after approval would be forgery, and as fraud is never to be presumed, the presumption is that the alteration was made before approval, at the suggestion of the judge. Opposed to this presumption in this case is the fact that the alteration is of such a character as to render the judgments void. The record, however, shows that the judgment was entered on the 22d day of October, and a general execution issued thereon on the 24th of November following. If an alteration of this character had been made in the mean time, it is scarcely possible that it would not have been called to the attention of the clerk and the attorney of plaintiffs in that action. There is no conflict of evidence upon the question we have been considering, and in drawing the inference from the facts presented that the cancellation was not made at the time record was entered or approved, the court erred.

Appellants ask, in their argument, that a decree be entered in this court in their favor. It does not, however, appear that

any motion was made for trial upon written evidence, as provided in section 2742 of the Revision. The cause is not, therefore, triable here *de novo*. It is reviewable as a law action, the only question presented for our determination being the sufficiency of the testimony to support the finding of the court. Finding the evidence insufficient, the cause must be remanded for a new trial.

REVERSED.