# Cases

DETERMINED IN THE

# SECOND DEPARTMENT

AT

# GENERAL TERM,

## May, 1894.

In the Matter of the Judicial Settlement of the Accounts of JULIA L. JAMES [now JULIA L. BUTTERFIELD], as Executrix, etc., of FREDERICK P. JAMES, Deceased.

*Bond given by a husband to his wife — meritorious consideration only — obligor not estopped by judgment of foreclosure — a judgment cannot be attacked collaterally — decree of sale enforced by an executrix against her testator's estate — right of a life tenant and of a remainderman to dividends on stock — validity of checks given by a husband to his wife — devisee of realty must pay a mortgage thereon — costs of a special guardian.*

A bond (where a mortgage is collateral thereto) executed as a gift by a husband to his wife is not enforcible against his estate, as it amounts to no more than a naked promise of the obligor to pay in the future, and being without consideration can be enforced neither against him nor his estate. (DYKMAN, J., dissenting.)

The presumption of a consideration arising from the presence of a seal on a written instrument is overcome by proof that such instrument was executed as a gift; whether an instrument be a promissory note or a bond, when it is shown to have been executed and delivered with no other consideration than natural love and affection, it has the same legal character as regards the obligation of the maker. (DYKMAN, J., dissenting.)

The equitable rule which supports a provision made for a wife or child, upon a meritorious consideration alone, is not applicable to an executory contract which, when supported by a meritorious consideration only, cannot be enforced either in law or equity in the State of New York. (DYKMAN, J., dissenting.)

The failure of a mortgagor to appear and answer in a suit brought to foreclose a mortgage does not debar him from thereafter contesting his personal liability for any deficiency on the bond which accompanied such mortgage, where no personal judgment against him was obtained in the action brought to foreclose the mortgage.

A judgment rendered in an action brought to foreclose a mortgage by a court having jurisdiction of the subject-matter of the suit, upon due and legal notice to the mortgagor, binds the property, the mortgagor and the persons who derive any interest therein through him. It cannot be attacked collaterally, and must be deemed valid until vacated and set aside in some direct proceeding brought for that purpose.

A judgment of foreclosure and sale, the operation of which was confined to the land affected thereby, was recovered by a person who, after the recovery thereof, became the executrix of the estate of the owner of the fee of such property. *Held*, that in the absence of proof showing misconduct in the sale or that the property sold for a sum largely below its value or was purchased for her benefit at an inadequate price, it was not a violation of duty on the part of such executrix to enforce the decree against such property.

As between a life tenant and a remainderman all dividends paid from property in which the capital of a corporation is invested, or the proceeds thereof, belong to the remainderman, while all dividends from current or accumulated earnings go to the life tenant; such rule is applicable to corporations which employ their capital in business enterprises. and earn an income from such employment, but it is not necessarily applicable to the dividends of a corporation, the entire capital of which consists of land and whose sole source of income is the sale thereof, and interest on deferred contracts of sale, or on purchase-money mortgages; and the fact that a dividend is paid from the capital of a corporation is not conclusive as to the right of the life tenant to receive it.

A legacy must be construed in accordance with the intent of the testator, and where a testator bequeaths to his widow one-half of the income of all his property of every kind of which he should die possessed, and at the time of his death the testator owned stock in a corporation, the entire capital of which was land and whose sole source of income arose from the sale of such land, it will be held that the testator by the use of the word "income" intended to include the dividends upon such stock.

Checks given by a person, when dying, to his wife, named in his will as executrix, in the absence of any evidence explaining why such checks were given, or the purpose for which they were received and used, must, upon her accounting as executrix, be treated as part of the testator's estate, and be accounted for by her. (DYKMAN, J., dissenting.)

A devisee of real estate covered by a mortgage must pay the amount secured to be paid by such mortgage, and it is not the duty of the testator's executrix to pay the amount of the same out of the personal property of the estate.

A surrogate has power to allow costs to the special guardian of an infant out of the estate of a decedent, but the compensation awarded to such special guardian should be limited to the services rendered prior to the decision of the Court of Appeals that such infant had no interest in the personal estate of the decedent.

CROSS-APPEALS by Julia L. Butterfield, as executrix, etc., of Frederick P. James, deceased, and by Harlin J. Woodward, an

infant, by his special guardian, Frank E. Smith, and others, con-
testants, from various portions of a decree of the Surrogate's Court
of the county of Putnam, entered in the Putnam County Surro-
gate's Court on the 1st day of July, 1892, modifying, settling and
allowing the account of proceedings of the executrix, etc., of Fred-
erick P. James, deceased.

*William II. Arnoux*, for contestants Chas. D. Chase and others.

*Frank E. Smith*, for contestants Henry A. James and others.

*Charles S. Clark*, for the guardian *ad litem*.

*William W. Goodrich* and *William P. Quinn*, for the executrix.

BROWN, P. J.:

Frederick P. James died in May, 1884, leaving a last will and
testament dated February 26, 1878. He left no descendants, and
his heirs and next of kin were brothers and sisters and descendants
of brothers and sisters. He left a widow, now Mrs. Butterfield,
who is the sole executrix of the will. The will has received judicial
construction by the Court of Appeals. (*Woodward* v. *James*, 115
N. Y. 346.) Under its decision the testatrix is entitled to one-half of
the gross income, and the heirs of the testator are entitled to the
other half, subject to the payment therefrom of all expenses, and
after the death of the testatrix they are entitled to the principal of
the estate.

Numerous questions are presented upon this appeal which will be
considered in their order.

*First.* As to the claim made by Mrs. James against the estate and
the mortgages upon the lands in Iowa. On October 10, 1879, the
testator executed and delivered to his wife two bonds and mort-
gages, one to secure the payment of $43,920, and the other the pay-
ment of $30,720, each payable one year after date, with interest at
seven per cent. The lands covered by the mortgages were situated
in Lyon county, Iowa. In November, 1882, with the consent of
Mr. James, suit was commenced in the District Court of Lyon
county to foreclose said mortgages, and process was personally
served upon Mr. James at his residence in the city of New York.

In May, 1883, upon default of appearance in the action, judgment of foreclosure and sale was entered, and in 1885, after the death of Mr. James, the real estate was sold under the judgment, and there was realized thereon, over and above taxes, the sum of $5,151 which was applicable to the payment of the debt. The decree of foreclosure gave no judgment against Mr. James, and none was ever recovered against him. The claim of the executrix is for the balance secured to be paid by the bonds, amounting to $127,120.10 for principal and interest, and has been allowed by the surrogate, and the decree directs that she pay that sum to herself out of the personal estate. The surrogate found that at the time of the execution of the bonds and mortgages Mr. James was not indebted to his wife in any sum whatever, and that the bonds and mortgages were executed and delivered (1) " as a provision for his wife in addition to the bequests and devises in her favor contained in his will." (2) " As a gift."

As gifts the bonds are not enforcible against the estate. They amount to nothing more than the donor's naked promise to pay in the future, and, being without consideration, could be enforced neither against him nor his estate. (*Harris* v. *Clark*, 3 N. Y. 93 ; *Holmes* v. *Roper*, 141 id. 64; *Wilson* v. *Baptist Ed. Society*, 10 Barb. 308 ; *Basket* v. *Hassell*, 107 U. S. 602; Pom. Eq. Juris. § 1148 ; *Anthony* v. *Harrison*, 14 Hun, 198.)

The presumption of a consideration arising from the seal is overcome by the findings quoted. The finding that the bonds and mortgages were given as a provision for Mrs. James, in addition to the provisions in her behalf made in the will, can have no meaning other than that they were gifts. The testimony to which we are referred as supporting this finding permits no other conclusion. But if this finding gave greater support to the claim of the executrix than the fact that they were gifts, it would be insufficient to uphold the decree. The equitable rule which supports a provision made for a wife or child, upon a meritorious consideration alone, is not applicable to an executory contract. The case of *Whitaker* v. *Whitaker* (52 N. Y. 368) is conclusive upon this question. The facts there differed in no respect from those in this case. A promissory note and a bond, shown to have been executed and delivered without consideration other than natural love and affection, are of

the same legal character in their relation to the makers.   In the case
cited the surrogate and the General Term gave judgment upon the
note upon the ground that the husband's obligation to provide for
his wife after his decease was a sufficient consideration to support it.
But the Court of Appeals overruled this contention, reversed the
judgment and disallowed the claim.   This case is in harmony with
the current of authority in this country and in England.   (Story's
Eq. Juris. § 987; Pom. Eq. Juris. § 1293; Perry on Trusts, §§ 107,
108; 2 Kent's Comm. 464.)

The cases cited in behalf of the executrix are mostly ones of
executed contracts.   In those in which executory contracts have
been upheld, the courts have found in the facts a consideration other
than that of natural love and affection.   *Hunt* v. *Johnson* (44 N.
Y. 27) was a case of an executed transfer of land by a husband to
his wife.   *Bucklin* v. *Bucklin* (1 Abb. Ct. App. Dec. 242) was
decided on the theory that the instrument was an executed contract.
*Beard* v. *Nutthall* (1 Vern. 427) was of the same character.   *Van
Amburgh* v. *Kramer* (16 Hun, 205) involves no question applicable
to this action.   In *Isenhart* v. *Brown* (2 Edw. Ch. 341) three bonds
made by the testator without valuable consideration were held to be
valid claims against his estate.   These bonds were all dated in May,
1820, and the testator died the same year leaving a will dated in
1818.   The doctrine laid down in that case cannot be supported
under later authorities.   But the bonds were dated and matured
before the enactment of our statute, which makes a seal presumptive
evidence only of a sufficient consideration, and were probably
assumed not to be affected by it, although the case was not decided
until 1834.   No question appears to have been raised as to the right
to inquire into the consideration, and the bonds were assumed to be
good without discussion.   But, without further reference to the
numerous authorities cited by counsel, it is sufficient to say upon the
point under consideration that an executory agreement, supported
by a meritorious consideration only, cannot now be enforced in law
or equity in this State.   (*Wilbur* v. *Warren*, 104 N. Y. 195;
*Twenty-third St. Bap. Church* v. *Cornell*, 117 id. 601.)

The judgment recovered in Iowa affords no support to the plain-
tiff's claim.   Its effect is confined within the limitation of the court
which granted it.   No jurisdiction was acquired over James person-

ally, and under the service made, the court had no power to render judgment *in personam*. (*Lutz* v. *Kelly*, 47 Iowa, 307.)

Mrs. James obtained all the relief in the foreclosure suit to which she was entitled, and the failure of Mr. James to appear and answer the complaint did not debar him from thereafter contesting his personal liability for any deficiency on the bonds. Giving full faith and credit, therefore, to the Iowa judgment, it does not touch the question presented here and does not bar the defense now made.

We are of the opinion, therefore, that the plaintiff's claim was not established, and must be disallowed.

But while the judgment of foreclosure has no effect upon James' personal liability upon the bonds, it is conclusive as to the ownership of the mortgage and the right of Mrs. James to have the lands described therein sold, and the proceeds applied to the payment of the amount secured to her. Having been rendered by a court having jurisdiction of the subject-matter of the suit, upon due and legal notice to Mr. James, the judgment binds the property and all persons who derive any interest therein through him. (*Durant* v. *Abendroth*, 97 N. Y. 140.)

It cannot be attacked collaterally, and must be deemed valid until vacated or set aside in some direct proceeding brought for that purpose. It precludes, therefore, any inquiry into the question discussed by some of the contestants as to the right of the executrix to sell the land, or as to whether she held the mortgage in trust for the firm of F. P. James & Co. The contestants acquire their right in the land solely through the will of James, and they are not privy to any rights of the firm or of Mr. Taylor, the other partner. After the rendition of that judgment Mr. James could not have litigated the question whether the mortgage was not held in trust for him, and the contestants are likewise debarred from raising it. Counsel for Charles D. Chase has argued at some length that as Mrs. James is trustee of all the property under her husband's will, it was a violation of her duty to sell the land under the foreclosure judgment. But I do not see how she could avoid so doing without abandoning all rights under that judgment. As already stated, it was not a judgmen *in personam*. Its operation was confined to the land. And, in the absence of proof showing misconduct in the sale, or that the property sold for a sum largely below its value, or was purchased

for her benefit at an inadequate price, I think there was no violation of her duty to the estate in enforcing the decree.

*Second.* As to the distribution between principal and income of money received by the executrix upon certain stocks. A part of the assets of the estate consisted of stock in three construction companies, viz.: The Hastings and Dakota Railway Company, the Minnesota Central Railway Company and the Minnesota Railway Construction Company. The two first named, prior to Mr. James' death, built and sold railways, and received in payment land grants. The Minnesota Railway Construction Company built and sold a railway, and received in part payment a certificate of indebtedness secured by a mortgage on land. In reference to the last-named company the surrogate found that since the death of Mr. James it had no other property, except such certificate of indebtedness and mortgage, and that the mortgaged land had been sold from time to time, and the said company had released its mortgages and received sums of money, partly from sales of land and partly from interest on deferred payments on sales. That it had no other business, and all the dividends paid to stockholders since the death of Mr. James had been derived from these sales and from interest on deferred payments on contracts of sale. In reference to the two first-named companies, he found that they had no other property, except the lands received under said grants, and no other business or source of income, except the sale of such lands, and that since May, 1884, all the dividends paid to their stockholders had been derived from the sale of such lands and from interest received on deferred contracts or on purchase-money mortgages accepted in payment for the sale of such lands. He further found that the capital of all of said companies, at the death of Mr. James, consisted of said lands and certificates of indebtedness, and that after his death none of them acquired any other property or assets. After the death of Mr. James dividends were paid upon these stocks aggregating $82,504. The executrix received $61,824 and the receiver of F. P. James & Co. $20,680. The surrogate found that $66,090.06 was derived from the sale of land, and the balance from interest on deferred payments on contracts of sale, and he apportioned that derived from sales of land to capital, and that derived from interest on contracts to income. Both parties have appealed from this

part of the decree. The executrix claims that the dividends on all of the stocks named must be treated as income, and the contestants' that that part paid to the receiver must be treated as principal. I think the claim of the testatrix must be sustained. The general rule applicable to dividends declared upon corporate stocks may be conceded to be as claimed by the contestants, viz. : That as between a life tenant and remainderman all dividends paid from property in which the capital of a corporation is invested or the proceeds thereof belong to the remainderman, while all dividends from current or accumulated earnings go to the life tenant. That rule is applicable to corporations which employ their capital in business enterprises and earn an income from such employment; but it is not necessarily applicable to the dividends of such a corporation as those under consideration. The fact that the dividend is paid from capital is not conclusive as to the right of the life tenant to receive it.

Mining and coal companies and all corporations whose capital is invested in property which is quarried and sold in the market pay their dividends from proceeds of their capital. When their mines and quarries are exhausted their capital is gone and dividends cease. But it would hardly be claimed that the annual dividends declared by such companies did not fall within the general designation of earnings. The corporations under consideration were not engaged in any business, as that term is ordinarily understood. Their capital was in lands, and they had no source of income other than sales of land. Dividends were declared out of the capital, and could not be derived from any other source. The corporations divided not only earnings from increase in value of lands, but capital in the proceeds of the sale of land itself. This was understood and contemplated by all the stockholders in the corporation. Under the rule applied by the surrogate, if all sales were for cash there would be no income to the estate until dividends were reinvested, but if sales were on credit income would be derived from interest on deferred payments. There is, in my judgment, a clear distinction between dividends paid by a corporation of the character of those named and dividends on the stock of a corporation which employs its capital in ordinary business. *Reed* v. *Head* (88 Mass. [6 Allen] 174) supports this view. The corporations there under consideration were land companies. The

bequest was of the income and dividends on the stock. It was decided that this meant dividends from sales of property constituting its capital stock. In that case, as the corporations could make dividends from no other source, the intent of the testator was plain. And if the bequest here was specifically of the income or dividends on the stock in question, there would be no doubt that the testator intended such dividends as should in the ordinary course of events be declared and paid upon the stock. The same result, I think, follows from the bequest as actually made. We must construe it in accordance with the intent of the testator. He gave to his wife one-half of the income of all his property of every kind of which he should die possessed. These stocks formed a material part of his estate. By the word " income " he clearly intended to include the dividends upon them, as they would constitute the only income to be derived from them. He knew there would be no earnings except from sales of land, and, hence, that the dividends would be paid from the property in which the capital was invested. He could not have intended that income should be limited to interest on contracts of sale, as there might not be any such contracts, nor to interest on dividends after they should be received by the testatrix and reinvested, for he gave her the income on property which he possessed at his death and not on that into which it should be converted after his death. In my opinion he intended his widow to have such dividends on the stocks in question as the corporations from the nature of their business and property would ordinarily make. The fact that the life tenant might possibly thus acquire the whole capital stock, is incidental to the character of the corporation and the manner in which the capital was invested. But it is an event not likely to occur. It was referred to in *Reed* v. *Head* (*supra*), and not regarded of much force, and is considered of little importance in the decision of this case.

None of the cases cited by the contestants relating to dividends on corporate stocks conflict with the rule here applied. They all relate to banking or business corporations, and are in that respect distinguished from the case under consideration. For these reasons we are of the opinion that all the dividends on the construction company stock paid to the testatrix are income, and must be so

treated. The testatrix would not necessarily be entitled, however, to the full amount of dividends paid to the receiver of F. P. James & Co. That partnership was composed of Mr. James and Horace Taylor. Both partners died within a few days of each other, Taylor dying first. A receiver was appointed who administered upon the firm property, paid the debts and transferred the surplus to Mrs. James, who thereafter settled with the executrix of Mr. Taylor. The question may be considered, therefore, as if Mrs. James was alone interested in the firm property. The receiver took possession of securities actually worth $653,724.41. The firm indebtedness was $345,446.49. There was paid to him as dividends on the stocks of the construction company, $20,680, and he received from other sources income amounting to $17,508. This latter sum, together with $4,294.32 of the first-named amount, which the surrogate held to be income, less such sum as was paid to Taylor's estate, has been credited to the testatrix. The right of Mrs. James as life tenant was to receive the income on her husband's share of the firm assets. This was the surplus after payment of the debts. The income paid to the receiver should have first been applied to pay interest on the firm debts. The balance would have been applicable to be disposed of under the will of Mr. James. I assume the firm debts drew interest and that it was paid by the receiver. By giving to Mrs. James the whole income derived from the firm assets, the interest on the firm debts was paid out of the principal. The income, including the dividends on the stock in the construction companies, which was paid to the receiver, should be redistributed, applying it first to the payment of interest on the firm indebtedness, and the balance to the testatrix. If the amount of interest paid on the firm indebtedness is not proven then it must be divided into two parts bearing the same proportion to each other as the firm debt bore to the actual value of the securities received by the receiver, and that part representing the debts of the firm credited to the capital of the estate and the balance to income.

*Third.* As to the payment of $2,500 to Mrs. James upon the day of her husband's death. This amount must be charged to her personally. The surrogate's finding that the checks for this sum were delivered to her by her husband's authority is not sustained by any evidence in the case. The only testimony on the

subject of this payment is that of McDonald, the bookkeeper of the firm. It fails to show any authority emanating from Mr. James to pay the money to his wife, nor is it shown that it was applied by her for the benefit of her husband or his estate. At the time of the giving of this money Mr. James was dying, and in the absence of any evidence explaining why it was paid or the purpose for which it was received and used, it must be treated as a part of the estate and charged to the executrix.

*Fourth.* As to the settlement with Taylor's estate and the assignee of that interest. I have examined fully the evidence relating to the settlement of the Taylor interest in the firm, and am of the opinion that the surrogate's conclusions as to that transaction must be sustained. There appears to be a small balance due the estate, which is treated in the decree as an asset. It is not chargeable personally to the executrix, unless she was guilty of some bad faith or neglect in the matter. None is found by the surrogate, and his finding has support in the evidence.

*Fifth.* As to the mortgages on the Rockingham apartment house. The executrix was not bound to pay these mortgages out of the personal estate. The contestants as devisees of the real estate must pay the principal of the mortgages, while their half of the income of the estate is primarily chargeable under the will with the interest. In this situation I fail to see any ground for complaint against the action of the executrix.

*Sixth.* As to the allowance of costs to the special guardian. The surrogate had power to make this allowance. (Code Civ. Proc. § 2561.)

But the compensation awarded to the guardian of Harlan J. Woodward should be limited to the services rendered prior to October, 1889, the date of the decision of the Court of Appeals in the action of *Woodward* v. *James.* It was there determined that Woodward had no interest in the personal estate, and after that ruling I do not see that it was essential that he should have been represented in this proceeding.

Other questions have been argued but none of them require notice.

The decree of the surrogate must be modified in accordance with this opinion, and as modified affirmed, with costs to all parties to be paid out of the estate.

The order to be settled by the presiding justice upon notice.

DYKMAN, J. (dissenting):

I concur in the opinion of the chief justice in this case except in two respects, the bonds and mortgages upon the lands in Iowa and Texas and the checks for $2,500 delivered to the executrix on the day of the death of her testator.

My conclusion is that the bond and mortgage were intended as a provision for the wife of the mortgagor, and that as there has been a valid judgment for the foreclosure of the mortgage, and there are no intervening rights of creditors, the transaction is valid.

A mortgage is a conditional transfer of real property, and has been sustained as a provision for the support of a child. (*Bucklin* v. *Bucklin*, 1 Keyes, 145.) Why not for a wife? The relation of husband and wife is sufficient to sustain the instrument. (4 Kent Comm. 465.) Conveyances to a wife are always upheld when not prejudicial to creditors. (2 Kent's Comm. 132.) A conveyance of real property by a husband to his wife, intended as a gift, may be sustained in equity. (*Hunt* v. *Johnson*, 44 N. Y. 27.) There is nothing in reason or natural justice prohibitive of this transaction.

Here we have a man of large wealth, whose duty it was to make ample provision for the support and comfort of his wife both during his life and after his death, and any application of his property to that purpose must receive the approbation of the courts and has ever done so.

The cases of *Harris* v. *Clark* (3 N. Y. 94) and *Phelps* v. *Pond* (23 id. 78) are not authorities adverse to this claim.

In the first case the decision was made with reluctance in obedience to authority, and in the second case the gift would have been sustained if a wife had been the beneficiary of the promise.

These two bonds and mortgages were instruments of a much more solemn character than bills of exchange or promissory notes. The land was the primary fund for the payment of the money as between the parties to the instruments and there has been a judgment for the enforcement of the mortgage.

To hold that this rich man, who had no children and no creditors, could not give his wife a bond and mortgage which she could enforce is equivalent to a decision that he could not do what he would with his own property.

I cannot bring my mind to such a conclusion, and I find no authority which obliges me to concur in such a result.

In relation to the $2,500 received by Mrs. Butterfield from the clerk of Mr. James I can perceive no more reason for charging her with that sum.

She was the wife of Mr. James and the head of his household; as he was unable to attend to business we must assume that his wife made the purchases for the house and paid the bills.

It was a time when unexpected expenses might become necessary and it was uncertain when or how more money could be obtained.

There would be equal propriety in charging the wife personally with money received by her during the week or month previous for household expenses.

· I am, therefore, in favor of affirming the decree of the surrogate upon these two subjects.

Motion to dismiss appeals denied, decree modified and as modified affirmed, with costs to all parties payable out of the estate.