Brown, P. J.
Frederick P. James died in May, 1884, leaving a last will and testament dated February 26, 1878. He left no descendants, and his heirs and next of kin were brothers and sisters, and descendants of brothers and sisters. He left a widow, now Mrs. Butterfield, who is the sole executrix of the will. The will has received judicial construction by the court of appeals, Woodward v. James, 115 N. Y. 346; 26 St. Rep. 147, and under it the .executrix is entitled to one half of the gross income, and the heirs of the téstator are entitled to the other half, subject to the payment therefrom of all expenses, and after the death of the executrix, they are entitled to the principal of the estate. Numerous questions are presented upon this appeal, which will be considered in their order.
1. As to the claim made by Mrs. James against the estate, and the mortgages upon the lands in Iowa. On October 10, 1879, the testator executed and delivered to his wife two bonds and mortgages,—one to secure the payment of §43,920, and the other the payment of $30,720,—each payable one year after date, with interest at 7 pier cent. The lands covered by the mortgages were situated in Lyon county, Iowa. In November, 1882, with the consent of Mr. James, suit was commenced in the district court of Lyon county to foreclose said mortgages, and process was personally served upon Mr. James at his residence in the city of New *185 York. In May, 1883, upon default of appearance m the action, judgment of foreclosure and sale was entered ; and in 1885, after the death of Mr. James, the real estate was sold under the judgment, and there was realized thereon, over and above taxes, the sum of $5,15L, which was applicable to the payment of the debt. The decree of foreclosure gave no judgment against Mr. James, and none was ever recovered against him. The claim of the executrix is for the balance secured to be paid by the bond's, amounting to $127,120.10 for principal and interest, and has been allowed by the surrogate, and the decree directs that she pay that sum to herself out of the personal estate. The surrogate found that, at the time of the execution of the bonds and mortgages, Mr. James was not indebted to his wife in any sum whatever, and that the bonds and mortgages were executed and delivered “(1) as a provision for his wife, in addition to the bequests and devises in her favor contained in his will; (2) as a gift” As gifts, the bonds are not enforceable against the estate. They amount to nothing more than the donor’s naked promise to pay in the future, and being without consideration, could be enforced neither against him nor his estate. Harris v. Clark, 3 N. Y. 93; Holmes v. Roper, 141 N. Y. 64 ; 56 St. Rep. 596 ; Wilson v. Education Society, 10 Barb. 308 ; Basket v. Hassell, 107 U. S. 602; Pom. Eq. Jur. § 1148; Anthony v. Harrison, 14 Hun, 198. The presumption of a consideration arising from the seal is overcome by the findings quoted. The finding that the bonds and mortgages were given as a provision for Mrs. James in addition to the provisions in her behalf made in the will can have no meaning other than that they were gifts. The testimony to which we are referred as supporting this finding permits no other conclusion; but, if this finding gave greater support to the claim of the executrix than the fact that they were gifts, it would be insufficient to uphold the decree. The equitable rule which supports a provision made for a wife or child upon a meritorious, consideration alone is not applicable to an executory contract. The case of Whitaker v. Whitaker, 52 N. Y. 368, is conclusive upon this question. The facts there differed in no respect from those in this case. A promissory note and a bond, shown to have been executed and delivered without consideration other than natural love and affection, are of the same legal character in their relation to the makers. In the case cited, the surrogate and the general term gave judgment upon the note upon the ground that the husband’s obligation to provide for his wife after his decease was a sufficient consideration to support it; but, the court of appeals overruled this contention, reversed the judgment and disallowed the claim. This case is in harmony with the current of authority in this country and in' England. Story, Eq. Jur. § 987; Pom. Eq. Jur. § 1293; Perry, Trusts, §§ 107, 108 ; 2 Kent, Comm. 464. The cases cited in behalf of the executrix are mostly ones of executed contracts. In those in which executory contracts have been "upheld, the courts have found in the facts a consideration other than that of natural love and affection. Hunt v. Johnson, 44 N. Y. 27, was a case of an executed *186 transfer of land by a husband to his wife. Bucklin v. Bucklin, 1 Abb. Dec. 242, was decided on the theory that the instrument was an executed contract Beard v. Nutthall, 1 Vern. 427, was of the same character. Van Amburgh v. Kramer, 16 Hun, 205, involves no question applicable to this action. In Isenhart v. Brown, 2 Edw. Ch. 341, three bonds made by the testator without valuable consideration were held to be valid claims against his estate. These bonds were all dated in May, 1820, and the testator died in the same year, leaving a will dated 1818. The doctrine laid down in that case cannot be supported under later authorities. But the bonds were dated and matured before the enactment of pur statute which makes a seal presumptive, evidence otily of a sufficient consideration, and .were probably assumed not to be affected by it, although the case was not decided until 1834. No question appears to have been raised as to the right to inquire into the consideration, and the bonds were assumed to be good without discussion. But, without further reference to the numerous authorities cited by counsel, it is sufficient, to say, upon the point under consideration, that an executory agreement, supported by a meritorious consideration only, cannot now be enforced in law or equity in this state. Wilbur v. Warren, 104 N. Y. 195; 5 St. Rep. 602; Twenty-third St. Baptist Church v. Cornell, 117 N. Y. 601; 28 St. Rep. 482. The judgment afforded in Iowa affords no support to the. plaintiff’s claim. Its effect is confined within the limitation of the court which granted it. No jurisdiction was acquired over James personally, and, under the service made, the court had no power to render judgment in personam. Lutz v. Kelly, 47 Iowa, 307. Mrs. James obtained all the relief in the foreclosure suit to which she was entitled, and the failure of Mr. James to appear and answer the complaint did not debar him from thereafter contesting his personal liability for any deficiency oh the bonds. Giving full faith and credit, to the Iowa judgment, it does not touch the question.presented here, and does not bar the defense now made. We are of the opinion, therefore,' that the plaintiff’s claim was not established, and must be disallowed.
But, while the judgment of foreclosure has no effect upon James’ personal liability' upon the bonds, it is conclusive as to the ownership of the mortgage and the right of Mrs. James to have the lands described therein sold, and the proceeds applied to the payment of the amount secured to her. Having been rendered by a court having jurisdiction of the subject-matter of the suit, upon due and legal notice to Mr. James, it binds the property and all persons who derive any interest therein through him. Durant v. Abendroth, 97 N. Y. 140. It cannot be attacked collaterally, and must be deemed valid until vacated or set aside in some direct proceeding brought for that purpose. It precludes, therefore, any inquiry into the question discussed by some of the contestants as to the right of the executrix to sell the land, or as to whether she held the mortgage in trust for the firm of F. P. James & Co. The contestants acquire their right in the land solely through the will of James, and they are not privy to any rights of the firm or to Mr. Taylor, the other partner. After the rendition of that judg. *187 merit, Mr. James could not have litigated the question whether the mortgage was not held in trust for him, and the contestants are likewise debarred from raising it. Counsel for Charles D. Chase has argued at some length that, as Mrs. James is trustee of all the property under her husband’s will, it was a violation of her duty to sell the land under the foreclosure judgment; but 1 do not see how she could avoid so doing without abandoning all rights under that judgment. As already stated, it was not a judgment in personam. Its operation was confined to the land ; and in absence of proof showing misconduct in the sale, or that the property sold largely below its value, or was purchased for her benefit at an inadequate price, I think there was no violation of her duty to the estate in enforcing the decree.
2. As to the distribution between principal „and income of money received by the executrix upon certain stocks/ A part of the assets of the estate consisted of stock in three construction companies, viz.: the Hastings & Dakota Railway Company, the Minnesota Central Railway Company, and the Minnesota Railway Construction Company. The two first named, prior to Mr. James’ death, built and sold railways, and received in payment land grants. The Minnesota Railway Construction Company built and. sold a railway, and received in part payment a certificate of indebtedness secured by a mortgage on land. In reference to the last-named company the surrogate found that since the death of Mr. James' it had no other property except such certificate of indebtedness and mortgage, and that the mortgaged land had been sold from time to time, and the said company had released its mortgages and received sums of money, partly from sales of land, and partly from interest on deferred payments on sales; that it had no other business, and all the dividends paid to stockholders since the death of Mr. James had been derived from these sales, and from interest on deferred payments on contracts of sale. In reference to the two first named companies, he found that they had no other property except the lands received under said grants and no other business or source of income except the sale of such lands, and that since May, 1884, all the dividends paid to their stockholders had been derived from the sale of such lands, and from interest received on deferred contracts, or on purchase money mortgages accepted in payment for the sale of such lands. He further found that the capital of all said companies, at the death of Mr. James, consisted of said lands and certificates of indebtedness, and that, after his death, neither of them acquired any other property or assets. After the death of Mr. James, dividends were paid upon those stocks aggregating $82,504. The executrix received $61,824, and the receiver of F. P. James & Go. $20,680. The surrogate found that $66,090.06 was derived from the sale of land, and the balance from interest on deferred payments on contracts of sale; and he apportioned that derived from sales of land to capital, and that derived from interest on contracts to income. Both parties have appealed from this part of the decree. The executrix claims that the dividends on all of the stocks named must be treated as income, and the contestants that that *188 part paid to the receiver must be treated as principal. I think the claim of the testatrix must be sustained. -The general rule applicable to dividends declared upon corporate stocks may be conceded to be as claimed by the contestants, viz., that, as between a life tenant and remainderman, all dividends paid from property in which the capital of a corporation is invested, or the proceeds thereof, belong and go to the remainderman, while all dividends from current or accumulated earnings go to the life tenant. That rule is applicable to corporations which employ their capital in business enterprises, and earn an income from such employment; but it is not necessarily applicable to the dividends of such a corporation as those under consideration. The fact that the dividend is paid from capital is not conclusive as to the right of the life tenant to receive it. Mining and coal companies and all corporations whose capital is invested in property which is quarried and sold in the market pay their dividends from proceeds of their capital." When their mines and quarries are exhausted their capital is gone, and dividends cease. But it would hardly be claimed that the annual dividends declared by such companies did not fall within the general designation of earnings. The corporations under consideration were not engaged in any “ business,” as that term is ordinarily understood. Their capital was in lands, and they had no source of income other than sales of land. Dividends were-declared out of the capital, and could not be derived from any other source. They divided, not only earnings from increase in value of lands, but capital in the proceeds of the sale of land itself. This was understood and contemplated by all stockholders in the corporation. Under the rule applied by the surrogate, if all sales were for cash, there would be no income to the estate until dividends were reinvested, but, if sales were on credit, income would be derived from interest on deferred payments. There is, in my judgment, a clear distinction between dividends paid by a corporation of the character of those named, and dividends on the stock of a corporation which employs its capital in ordinary business. Reed v. Head, 6 Allen, 174, supports this view. The corporations there under consideration were land companies. The bequest was of the income and dividends on the stock. It was decided that this meant dividends from sales of property constituting its capital stock. In that case, as the corporations could make dividends from no other source, the intent of the testator was plain; and, if the bequest was specifically of the income or dividends on the stock in question, there would be no doubt that the testator intended such dividends as should, in the ordinary course of events, be declared and paid upon the stock. The same result, 1 think, follows from the bequest as actually made. We must construe it in accordance with the intent of the testator. He gave to his wife one-half of the income of all his property, of every kind, of which he should die possessed. These stocks formed a material part of his estate. By the word “income” he clearly intended to include the dividends upon them, as they would constitute the only income to be derived from them. He knew there would be no earnings except from *189 sales of land, and hence that the dividends would be paid from the property in which the capital was invested. He could not have intended that income should be limited to interest on contracts of sale, as there might not be any such contracts, nor to interest oil dividends after they should be received by the testatrix and reinvested, for he gave her the income on property which he possessed at his death, and not on that into which it should be converted after his death. In my opinion, be intended his widow to have such dividends on the stocks in question as the corporations, from the nature of their business and property would ordinarily make. The fact that the life tenant might possibly thus acquire the whole capital stock is incidental to the character of the corporation, and the manner in which the capital was invested; but it is an event not likely to occur. It was referred to in Reed v. Head, supra, and not regarded of much force, and is considered of little importance in the decision of this case. Hone of the cases cited by the contestants relating to dividends on corporate stocks conflict with the rule here applied. They all relate to banking or business corporations, and are in that respect distinguished from the case under consideration. For these reasons, we are of the opinion that all the dividends on the construction company stock paid to the testatrix are income, and must be so treated. The testatrix would not necessarily be entitled, however, to the full amount, of dividends paid to the receiver of F. P. James & Co. That partnership was composed of James and Horace Taylor. Both parties died within a few days of each other, Taylor dying first. A receiver was appointed, who administered upon the firm property, paid the debts, and transferred the surplus to Mrs. James, who thereafter settled with the executrix of Mr. Taylor. The question may be considered, therefore, as if Mrs. James was alone interested in the "firm property. The "receiver took possession of securities actually worth $658,724.41. The firm indebtedness was $345,446.49. There was paid to him ns dividends on the stocks of the construction company $20,680, and he received from other sources income amounting to $17,508. This latter sum, together with $4,294.32 of the first-named amount, which the surrogate held to be income, less such sum as was paid to Taylor’s estate, has been credited to the testatrix. The right of Mrs. James as life tenant was to receive the income ■on her husband’s share of the firm assets. This was the surplus after payment of the debts. The income paid to the receiver should have first been applied to pay interest on the firm debts. The balance would have been applicable to be disposed of under the will of Mr. James. I assume the firm debts drew interest, and that it was paid by the receiver. By giving to Mrs. James the whole income derived from the firm assets, the interest oh the firm debts was paid out of the principal. The income, including the dividends on the stock in the construction companies, which was paid to the receiver, should be redistributed, applying it first to the payment of interest on the firm indebtedness, and the balance to. the testatrix. If the amount of interest paid on the firm indebtedness is not proven, then it must be divided into two parts, *190 bearing the same proportion to each other as the firm debt bore to the actual value of the securities received by the. receiver, and that part representing the debts of the firm credited to the capital of the estate, and the balance to income.
3. As to the payment of $2,500 to Mrs. James upon the day of her husband’s death. This amount must be charged to her personally. The surrogate’s finding that the checks for this sum were delivered to her by her husband’s authority is not sustained by any evidence in the case. The only testimony on the subject of this payment is that of Me Donald, the bookkeeper of the firm. It fails to show any authority emanating from Mr. James to pay the money to bis wife, nor is it shown that it was applied by her for the benefit of her husband or his estate. At the time of its receipt, Mr. Ames was dying, and, in the absence of any evidence explaining why it was paid, or the purpose for which it was received and used, it must be treated as a part of the estate and charged to the testatrix.
4. As to the settlement with Taylor’s estate and the assignee of the interest. I have examined fully the evidence relating to the settlement of the Taylor interest in the firm, and am of the opinion that the surrogate’s conclusion as to that transaction must be sustained. There appears to be a small balance due the estate, which is treated in the decree as an asset. It is not chargeable personally to the executrix, unless she was guilty of some bad faith or neglect in the matter. None is found by the surrogate, and his finding has support in the evidence.
5. As to the mortgages on the Rockingham apartment house. The testatrix was not bound to pay these mortgages out of the personal estate. The contestants, as devisees of the real estate, must pay the principal of the' mortgages, while their half of the income of the estate is primarily chargeable under the will with the interest. In this situation I fail to see any ground for complaint against the action of the testatrix.
6. As to the allowance of costs to the special guardian. The surrogate had power to make this allowance. Code Civ. Proc., § 2561. But the compensation awarded to the guardian, Harlan J. Woodward, should be limited tó the services rendered .prior to October, 1889,—the date of the decision of the court of appeals in the action of Woodward v. James. It was there determined that Woodward had no interest in the personal estate, and after that ruling I do not see that it was essential that he should have been represented in this proceeding.
Other questions have, been argued, but none of them require notice. The decree of the surrogate must be modified in accordance with this opinion, and, as modified, with costs to all parties, to be paid out of the estate; the order to be settled by the presiding justice upon notice.
Pratt, J. concurs.