JOHN RAHER, Appellant, v. EDWARD RAHER and F. V. MULLIN, Appellees.

**Insane persons:** GUARDIANSHIP: PLEADINGS: JURISDICTION: JUDGMENTS. A petition for the appointment of a guardian of the property of a person of unsound mind need not allege that such person is an inhabitant of the county to confer jurisdiction, as the fact of residence is the essential thing in this respect; and a judgment finding mental incapacity and appointing a guardian presumes a finding that the defendant was an inhabitant of the county, especially where the judgment recited a finding that the court had jurisdiction of the defendant and the subject matter.

**Same:** SERVICE OF NOTICE. A proceeding for the appointment of a guardian for the property of a person of unsound mind is in personam, and personal service of notice, as distinct from service by publication, is essential to give the court jurisdiction.

**Personal judgments:** SERVICE OF NOTICE OUTSIDE OF STATE: STATUTES. The statutes relating to the commencement of actions and service of notice contemplate the rendition of a personal judgment against a resident of the state actually served with notice outside of the state.

**Same:** CONSTITUTIONAL LAW: DUE PROCESS. The statutes authorizing service of notice on residents of the state outside of its territorial limits and the rendition of personal judgment on such service are unconstitutional, because depriving one of his property without due process of law.

**Commencement of actions:** NOTICE. The statutory notice for the commencement of an action is not technically a process of the court, yet it serves the same purpose and derives its efficiency solely from the statutes.

Deemer, J., and Sherwin C. J., dissenting.

*Appeal from Iowa District Court.*—HON. R. P. HOWELL, Judge.

THURSDAY, JANUARY 19, 1911.

ACTION in equity to set aside a judgment rendered in a proceeeding instituted by the defendant, Edward Raher, to have this plaintiff adjudged to be of unsound mind and to have a guardian appointed for him. In such proceeding there was a judgment in favor of the plaintiff therein, and defendant F. W. Mullin was appointed guardian. The lower court refused to set aside the judgment, and plaintiff appeals.—*Reversed.*

*Vose & Wallace,* for appellant.

*Dower & Murphy,* for appellee.

McCLAIN, J.—The special proceeding in which this plaintiff was adjudged to be of unsound mind and Mullin was appointed guardian was instituted in the district court of Iowa County, and personal service was made upon this plaintiff while he was in fact within the limits of the state of South Dakota. The petition in such proceeding did not allege the place of residence of the defendant therein, but it is now stipulated that his legal residence was in Iowa County. Adopting a different order of discussion from that followed in appellant's brief, we shall consider the three propositions relied upon for appellant to show that the judgment in the guardianship proceeding was void for want of jurisdiction, and should now be set aside on that ground. These are, first, that John Raher was not an inhabitant of Iowa County where the special proceeding was instituted, and therefore the court had no jurisdiction to adjudicate the question of his mental capacity and appoint a guardian for him; second, that the statutes of the state do not authorize a personal judgment against a defendant personally served with notice and not appearing in the action; and, third, that if such

service is authorized as a basis for personal judgment, the statute is in this respect unconstitutional, as authorizing the defendant in such proceeding thus served to be deprived of liberty and property without due process of law.

I.   The petition in the proceeding for guardianship did not allege that John Raher was an inhabitant of Iowa County, and it is insisted for appellant that such fact was essential to the jurisdiction of the court in such proceeding under Code, section 3219, which provides that "when a petition verified by affidavit is presented to the district court that any inhabitant of the county is" a person of unsound mind and the allegations of the petition are satisfactorily proved, the court may appoint a guardian for the property of such person. We do not understand from the language quoted that an allegation in the petition that the defendant is an inhabitant of the county is made essential, but, on the other hand, we reach the conclusion that the fact of residence is the essential thing in this respect. When the petition alleges with reference to a person named that he is of unsound mind, etc., then, as we understand the language of the statute, the court (with the assistance of a jury) is authorized to determine whether the defendant is an inhabitant of the county, and a judgment finding mental incapacity and appointing a guardian presumes a finding that defendant was such inhabitant. But even if this were not so, the judgment in the proceeding against John Raher expressly recited a finding that the court had "jurisdiction of the defendant and the premises," thus indicating a determination of the court on the evidence not only that such defendant was served with notice, but also that the circumstances necessary to justify the court in proceeding were shown to exist, one of these necessary circumstances being, of course, that defendant was an inhabitant of the county. In the face of this express finding, we would not be justified in holding that a failure to al-

*1. INSANE PERSONS: guardianship: pleadings: jurisdiction: judgments.*

lege the fact in this respect defeated the jurisdiction of the court. In Guthrie v. Guthrie, 84 Iowa, 372, it was held that in view of the provision now found in Code, section 3220, that all the rules of ordinary actions shall govern in this proceeding so far as applicable, the verification of the petition referred to in the language above quoted was not a jurisdictional matter; and we therefore think that the other averment contemplated by such language, that the defendant is an inhabitant of the county, does not purport to state an essential averment, failure to insert which would deprive the court of justification, but discloses only a fact which must be established in order to justify the court in granting the relief prayed. If the jurisdiction of the court in this respect is to be determined with reference to the facts and not with reference merely to the averment, then it sufficiently appears not merely by presumption, but by express recital, that such fact existed, and there is nothing in this record to indicate the nonexistence of the fact thus recited, for John Raher may well have been an inhabitant of the county, although temporarily outside of the state.

II. A proceeding to secure the appointment of a guardian for one who is of unsound mind is in personam, and personal service, as distinct from service by publica-

2. SAME: service of notice.
tion, is essential to give the court jurisdiction. Brown v. Lambe, 119 Iowa, 404. This proposition is conceded by counsel for appellee, and it is further conceded that there was no appearance by or in behalf of John Raher in the guardianship proceeding, and that if the court had any jurisdiction to declare him of unsound mind and appoint a guardian for his property, such jurisdiction was acquired by a notice personally served upon him in the state of South Dakota. It being stipulated that he had a legal residence in Iowa County, we have presented a question which, in so far as we can discover, is absolutely without precedent in this

or any other state of this Union. The first question must be whether such service is authorized by our statute, for, if unauthorized, the court acquired no jurisdiction.

The statutory provisions as to the commencement of ordinary actions are as follows: An action is commenced in a court of record by serving the defendant with an original notice (Code, section 3514) which, so far as personal service is concerned, is to be made by reading the notice to the defendant or offering to do so, etc., and in either case by delivering him personally a copy, or offering to do so (Code, section 3518). It is then provided that if service is made within the state, the return may be proven by the signature of the sheriff or his deputy, of which the court shall take judicial notice, but if made without the state, or by one not such officer within the state, the return must be proven by the affidavit of the person making the same. Code, section 3524. Service by publication is then provided for in various classes of cases, all of which may be properly described as proceedings *in rem,* unless it be the case of an action "where the defendant being a resident of the state has departed therefrom or from the county of his residence with intent to delay or defraud his creditors, or to avoid the service of a notice, or kept himself concealed therein with like intent." Code, section 3534. Following other provisions as to service by publication, it is declared that "actual personal service of notice within or without the state supersedes the necessity of publication." Code, section 3537.

3. PERSONAL JUDGMENTS: service of notice outside of state: statutes.

The sections above referred to are all found in the chapter of the Code relating to the "manner of commencing actions," but in the chapter relating to "trial and judgment" is found the following provision: "No personal judgment shall be rendered against a defendant served by publication only who has not made an appearance; but a personal judgment may be rendered against a defendant,

whether he appears or not, who has been served in any mode provided in this Code other than by publication, whether served within or without the state, if such defendant is a resident of the state." Code, section 3800. We are inclined to think that if it was competent for the Legislature to provide for personal judgment on actual personal service of notice without the state, then it was the intention to authorize a personal judgment against a resident of the state actually served with notice outside the state, for the section last cited evidently has reference to all the methods of service of notice provided for in the chapter relating to the "commencing of actions," and excludes only those by publication. Actual service outside the state is not declared to be a form of service by publication, but a substitute therefor. In view of the well-recognized rule that personal judgment can not be rendered on service by publication or upon personal service made upon nonresidents outside of the state, it must have been the legislative thought that it was competent to impose upon residents of the state, though for the time being outside of its territorial limits, the duty upon being personally served with notice to return to make defense in the action in which such service is made, or to make such defense through counsel appearing for the purpose. See note to section 3164, Revision of 1860, where this provision first appears. This conception of a possibility of rendering personal judgment on service had otherwise than within the state is suggested also by the portion of Code, section 3534, above quoted, which seems to authorize personal judgment on service by publication in an action against a resident who had departed from the state with intent to delay or defraud his creditors or to avoid service of notice.

In *Bates v. Chicago & N. W. R. Co.,* 19 Iowa, 260, it is said with reference to the provision of section 3164 of the Revision of 1860 that "this section does not extend

the mode of service, nor add to the cases in which service may be made, either by publication or by service without the state. But it is only when service has been made in a 'mode in this Code provided' that such personal judgment may be rendered; and it is nowhere provided that in personal actions, wherein no provisional remedy is sought, service can be made without the state." But it clearly appears from the opinion itself that the question which the court was considering was whether jurisdiction could be acquired in an ordinary personal action by service of notice on a nonresident out of the state, and whatever is said in the opinion applicable to the sufficiency of such notice upon a resident of the state is evidently pure dictum. As to the language used by the Legislature, there is very little opportunity for construction, and we would not feel justified in holding that such service as was had in the guardianship proceeding is not authorized by the statute, unless it might be for the reason that such construction would render the statute unconstitutional.

III. We are brought, then, face to face with the question (and it is immaterial whether it be discussed for the purpose of throwing light on the interpretation of

4. SAME: constitutional law: due process. the statute or for the purpose of determining its constitutionality) whether a state may authorize service of notice of actions on residents of the state outside of its territorial limits, and may provide for the rendition of personal judgment on such service. Singularly enough we find no direct authority upon this question. It was evidently the view entertained by the code commissioners in drafting the statutory provisions now under consideration for personal judgment or service without the state, which was first embodied in the Civil Code enacted in 1860 as Part III of the Revision of that year (section 3164), that a state may as to residents authorize a personal judgment on a merely constructive service, which would confessedly not

be valid as to a nonresident defendant. In the printed report which accompanied this Civil Code the commissioner explains that a personal judgment thus rendered on service outside of the state would not be recognized in a sister state as a judgment entitled to full faith and credit under the provisions of the federal Constitution, but he recommends it as having an advantage over a mere judgment *in rem,* which might have been had by publication only in this state (see page 329): "The judgment *in rem* is measured by the property in court, which may be quite insufficient to discharge the claim, and if the defendant brings more into the jurisdiction the next year, the plaintiff has to repeat his process by another suit . . . before he makes his debt; while by this plan, having got a personal notice anywhere, he has a personal judgment, good here at least, and which may be extended over any property of the defendant then or afterwards within the state."

It is to be noted in passing that the provision above referred to in the Revision of 1860 was applicable alike to residents and nonresidents, for the concluding clause of the section as it now stands, limiting its application to residents, was added in the present Code (section 3800) with this explanation by the commissioners: "The added clause makes clear what is already probably the law; personal service on a nonresident ought not to have any effect on his rights different from that resulting from publication." See Code Commissioners' Report, 1896, page 104. It is therefore quite apparent that what the Legislature in adopting the Civil Code of 1860 attempted to do was to authorize some kind of a judgment alike against residents and nonresidents on personal service out of the state, without the preliminary seizure of any property which would give the court jurisdiction *in rem,* and the question we have to determine is whether such a judgment is of any validity within the state.

It may be conceded that expressions of opinion are found in decided cases and in text-books justifying the view evidently entertained by the Legislature as above indicated. This view is contrary to the general proposition that the laws of a state, especially a state of this Union, are territorial rather than personal in their force and application. *Romano v. Capital City Brick & Pipe Co.,* 125 Iowa, 591. And it ignores the provision of our own Constitution and of the fourteenth amendment of the federal Constitution, that no person shall be deprived of his property without the process of law.

After examining all the cases which we have been able to find bearing directly or remotely on the question, we reach the conclusion that no court of last resort in any of the states of the Union has upheld such a judgment, as against an attack based on the want of authority of the state to authorize such a judgment or the want of authority of the court to render it. Thus in *Henderson v. Staniford,* 105 Mass. 504 (7 Am. Rep. 551), in which defendant, sued in Massachusetts, defended on the ground that a judgment had previously been rendered against him for the same cause of action in California, it was said that although defendant was not in California when the action was commenced against him there, or at any time during its pendency, and no notice or service of process was ever made upon him personally, and although he did not appear by counsel or otherwise or assent to the judgment which was rendered on default, yet, as he had been a citizen of California where the contract was made, and that continued to be his legal domicile when the judgment was rendered, "he was, therefore, upon principles of international law, subject to the laws and jurisdiction of the courts of that state," (Citing Story, Conflict of Laws, sections 546 and 548, and Massachusetts cases). But the decision is grounded on the view, not that the judgment was valid, but that, as plaintiff had taken a judg-

ment, even though subject to being avoided in a proper proceeding, he could avoid it only by plea, and upon such plea the burden was upon him to show its invalidity. The ground of the decision is thus aptly stated: "In the opinion of the court, a plaintiff who has voluntarily converted his demand into the form of a judgment, valid where it is rendered, so long as the defendant has not attempted to avoid the judgment in any mode, can not himself treat it as of no effect and sue upon the original demand. If the judgment is voidable for want of service upon the defendant or notice to him, he may waive that. He does waive it by pleading the former judgment in bar of the present action." While this expression of view assumes that the judgment was valid where rendered the case is not predicated on that ground, but on the thought that if the defendant sets up such judgment, whether valid or not, in bar of a suit in another jurisdiction on the same cause of action, "he affirms the validity of that judgment against himself and is, *eo instanti,* estopped to impeach it thereafterward." And the court suggests that the inconvenience of putting the plaintiff in a position of being defeated when he pleads his cause of action by the plea of a former judgment and, if he sues on the judgment, by the plea that 'it was not rendered on valid service, might be obviated by joining a count upon the judgment with one upon the original demand, or by asking to amend after the judgment is pleaded, so as to rely upon such judgment. As this case is more in point in its facts than any other to be found on the subject, it has seemed wise to set out the exact reasoning of the court, for the purpose of showing that the court did not decide as an original proposition that the California judgment was valid. The Massachusetts cases relied upon by the court are cases in which the general proposition is stated, that personal judgments of courts are not binding upon defendants "not owing them allegiance or found within their

limits;" this expression being found in the dissenting opinion in *Mills v. Duryee,* 7 Cranch, 481, 486 (3 L. Ed. 411).

There are cases in which a defendant not served within the jurisdiction of the court is held bound by the decision; as, for instance, it is said that one who is bail for another is bound by the judgment, although not himself subject to the court's jurisdiction *(McRae v. Mattoon,* 13 Pick. 53), and that one of two joint debtors, although not within the court's jurisdiction, is bound by a judgment against his codebtor. *Harker v. Brink,* 24 N. J. Law, 333. But in these cases nothing is said about the power of a court to take jurisdiction of a defendant who is not served with personal notice in the state. And it is doubtful whether the propositions announced in these cases are sound, if given effect according to the general language used. See, for instance, *Holt v. Alloway,* 2 Blackf. (Ind.) 108, where a Kentucky judgment against a person resident in that state, who was adjudged liable as bail without personal notice, was held not absolutely void, but only *prima facie* valid, and not conclusive. In *Bowler v. Houston,* 30 Grat. (Va.) 266 (32 Am. Rep. 673), it was said that a judgment rendered in another state against all the former members of a dissolved partnership without personal service on some of them could not be enforced in that state as a personal judgment against those not served, although by the law of the state where rendered it was enforceable against their joint property. And in *Phelps v. Brewer,* 9 Cush. (Mass.) 390 (57 Am. Dec. 56), it was said that a judgment against a partnership could not be enforced outside of the jurisdiction as a personal judgment against one of the partners not served with process.

In *Bimeler v. Dawson,* 4 Scam. (Ill.) 536 (39 Am. Dec. 430), it is said that it is competent for a state to declare what manner of process shall be sufficient to bring its citizens into court, although its regulations can

not operate extraterritorially. But the point decided was that, as the record of the judgment sued upon in Illinois showed that there was service of process in Ohio where the judgment was rendered, the Illinois court would properly entertain a presumption that defendant was a citizen of Ohio and that the court of that state had jurisdiction. There was nothing on the record or in the evidence to justify a finding that the defendant was not properly served in Ohio. The record did show service by leaving a copy of the summons at defendant's place of residence and, in the absence of any showing that he was a nonresident, this would, of course, be presumptively sufficient. Indeed, there are several cases in which language is used at first blush justifying the assumption that the court was sustaining a personal judgment on merely constructive service, but it will be found that what is referred to as constructive service is service upon a resident by leaving a copy with a member of his family at his last known place of residence. a form of service which is universally sustained not as constituting constructive but actual—that is substituted—service. *Sturgis v. Fay,* 16 Ind. 429 (79 Am. Dec. 440). In the following cases language indicating that a personal judgment may be rendered against a resident without actual service is to be explained as meaning simply that substituted service, by leaving a copy with a member of his family at his last known place of abode, is sufficient. *Biesenthall v. Williams,* 1 Duv. (Ky.) 329 (85 Am. Dec. 629); *Morrison v. Underwood,* 5 Cush. (Mass.) 52; *Buford v. Kirkpatrick,* 13 Ark. 33; *Hamill v. Talbott,* 72 Mo. App. 22; *Harryman v. Roberts,* 52 Md. 64; *Huntley v. Baker,* 33 Hun, (N. Y.) 578; *Cassidy v. Leitch,* 2 Abb. N. C. (N. Y.) 315. It is evident that these cases have no bearing on the question now under consideration and that whatever is said therein with reference to the validity of a personal judgment without actual service has reference only to the distinction between

actual and substituted service, a distinction which is of
no consequence for present purposes, for, of course, it
must be conceded that as to the method of making actual
service, so far as the effect is to give information to the
defendant within the jurisdiction of the pendency of the
proceeding against him, the statutes of the state must con-
trol.  On the other hand, it is, of course, true that service
by leaving a copy at the last known place of residence
is of no validity to give the court jurisdiction over one
who is in fact a nonresident.  *Amsbaugh v. Exchange
Bank,* 33 Kan. 100 (5 Pac. 384).

Another class of cases may be referred to in which it
has been said, in a general way, that a defendant not with-
in the state may be brought within the jurisdiction of its
courts.  These are cases where the statute authorizes ser-
vice upon a resident agent of a nonresident corporation
which the corporation, as a condition of doing business
within the state, is required to appoint for that purpose.
*Gillespie v. Commercial Mut. Marine Ins. Co.,* 12 Gray
(Mass.) 201 (71 Am. Dec. 743).  And, see, *Pennoyer v.
Neff,* 95 U. S. 714, 735 (24 L. Ed. 565), where the rea-
son for this rule is clearly stated.  Likewise, personal ser-
vice within the state on the president of a foreign corpora-
tion has been held good as against the corporation *(Mexi-
can Railroad v. Pinkney,* 149 U. S. 194, 13 Sup. Ct.
859, 37 L. Ed. 699), and special appearance to object
to a service made outside the state may by statute confer
jurisdiction.  *York v. Texas,* 137 U. S. 15 (11 Sup. Ct.
9, 34 L. Ed. 604).

Some English cases seem to recognize the validity
of unusual forms of service on absent defendants who are
citizens of the state which authorize such service; but they
are not in point here, for they involve acts done within
and not without the state.  *Douglass v. Forrest,* 4 Bing.
686; *Becquet v. McCarthy,* 2 Barn. & Adol. 941.  The
point actually decided in *Schibsby v. Westenholz,* L. R. 6

Q. B. 155, was that a personal judgment against a nonresident could not be sustained. In *Chopin v. Adamson,* L. R., 9 Exch. 345, a French judgment against a nonresident was sustained on the ground that it enforced a liability assumed by defendant as stockholder in a French corporation; the reasoning of the court being that, by becoming a stockholder in such corporation, he expressly or impliedly contracted that the courts of France should have jurisdiction to enforce whatever liability might attach to him as such stockholder. The principle thus recognized seems to be analogous to that in accordance with which in Pennsylvania a power of attorney to confess judgment may be exercised so as to confer jurisdiction, although when suit is brought the debtor is a nonresident. See *Grover Mach. Co. v. Radcliffe,* 137 U. S. 287 (11 Sup. Ct. 92, 34 L. Ed. 670). In none of these cases is any form of service outside the state held sufficient to sustain a personal action.

It must be conceded, however, that we have found no case in which it has been specifically held under pertinent facts that a personal judgment against a resident, who is actually served with notice outside of the territorial limits of the state is void. But in many cases, and in some of the texts, are to be found unqualified statements that the laws of the state have no extraterritorial force, and that process served outside of the state will not give the court jurisdiction. See, in general, *Weil v. Lowenthal,* 10 Iowa, 575; *Hakes v. Shupe,* 27 Iowa, 465; *Lutz v. Kelly,* 47 Iowa, 307; *Bank of Horton v. Knox,* 133 Iowa, 443; *Harkness v. Hyde,* 98 U. S. 476 (25 L. Ed. 237); *Ewer v. Coffin,* 1 Cush. (Mass.) 23 (48 Am. Dec. 587); *Hunt v. Searcy,* 167 Mo. 158 (67 S. W. 206); *Cross v. Armstrong,* 44 Ohio St. 613 (10 N. E. 160); *Steel v. Smith,* 7 Watts & S. (Pa.) 447; *Reber v. Wright,* 68 Pa. 471; *McEwan v. Zimmer,* 38 Mich. 765 (31 Am. Rep. 332); *Irby v. Wilson,* 21 N. C. 568; *Bernhardt v. Brown,* 118

N. C. 700 (24 S. E. 527, 36 L. R. A. 402); *Amsbaugh v. Exchange Bank,* 33 Kan. 100 (5 Pac. 384); *Zepp v. Hager,* 70 Ill. 223; *Holmes v. Holmes,* 4 Lans. (N. Y.) 388; *Bischoff v. Wethered,* 9 Wall. 812 (19 L. Ed. 829); *Cooper v. Reynolds,* 10 Wall. 308 (19 L. Ed. 931); *Thompson v. Whitman,* 18 Wall. 457 (21 L. Ed. 897); *D'Arcy v. Ketchum,* 11 How. 165 (13 L. Ed. 648); Story, Conflict of Laws (7th Ed.) section 539; Cooley, Constitutional Limitations (7th Ed.) 579-584; Minor, Conflict of Laws, section 485; Kinne, Pleading and Practice, section 171.

So far as the opinions in these cases are predicated upon lack of power on the part of the state to give its laws extraterritorial effect by authorizing service of process outside of the state, they are applicable to service abroad upon a citizen, as well as upon a nonresident; for although the notice contemplated by our statutes for the commencement of an action is not technically process of a court *(Nichols v. Burlington, etc., Plank Road Co.,* 4 G. Greene, 42, and *Davenport v. Bird,* 34 Iowa, 524), yet it serves the same purpose and derives whatever efficiency it has solely from the statutes. The substitution of notice for process in law actions under our reform procedure is analogous to the substitution in chancery procedure of notice for subpœna and there is no pretense in the chancery practice that notice can be effectual where the service of a subpœna would be ineffectual to confer jurisdiction. On the other hand, it is well settled that notice in a chancery proceeding, if served upon a party out of the jurisdiction of the court, does not authorize the court to render personal judgment against the person thus served. *Dunn v. Dunn,* 4 Paige (N. Y.) 425; *McEwan v. Zimmer,* 38 Mich. 765, 774 (31 Am. Rep. 332); 1 Daniel, Chancery Practice (4th Ed.) 449, 453.

We are not concerned here as to what is sufficient no-

tice to sustain a judgment *in rem,* for the jurisdiction of the court rendering such a judgment is primarily founded on the presence of the property in the state. Such a judgment may be rendered even as to a nonresident on publication only, or other constructive service authorized by the laws of the state, although a personal judgment confessedly could not be so authorized. See *Pennoyer v. Neff,* 95 U. S. 714 (24 L. Ed. 565), a case which is hereafter discussed.

It may be conceded that none of the cases hereinbefore cited expressly hold under pertinent facts that service outside of the state is ineffectual to confer jurisdiction upon a court of the state to render personal judgment, if the statutes provide for such service. And this is not surprising in view of the fact that those cases, as well as others cited in the earlier portion of this opinion, almost without exception relate to the enforcement in another state of judgments rendered without the jurisdiction of the person of the defendant in the court rendering such judgment. The right to enforce such judgments is predicated in general upon the injustice and consequent impropriety of thus giving effect to such a judgment of another state. Judge Cooley pertinently states this view in *McEwan v. Zimmer,* 38 Mich. 765 (31 Am. Rep. 332), as follows: "The question, then, seems to be narrowed to this, whether the service of process beyond the jurisdiction of the court issuing it, can impose upon the party served the obligation to appear in the suit and make there his defense if he has any. If this question must be answered in the affirmative as regards a judgment rendered in Canada, it must receive a like answer when it contemplates a judgment rendered on a like service in New Zealand, or in one of the colonial courts of the Dutch East Indies. The question therefore is not one to be disposed of on a consideration merely of how this defendant might be affected; but it suggests the possible cases of citizens of this coun-

try proceeded against in the remotest borders of civilization, on claims which may or may not have a foundation in justice, but which become established claims by default in making answer to a suit upon them. Now the service of process is for the purpose of notifying the defendant and giving him a fair opportunity to defend. But the service of process in Michigan, which requires one to appear and answer to a demand in a foreign country, would in general be of no value whatever, because a defense abroad would either be practically impossible or would be so expensive as to exceed in cost the importance of the demand. It may therefore be justly and emphatically declared that such service would give no fair opportunity to defend, and consequently could not accomplish the purpose of process. Were the doctrine accepted which would permit it, it might reasonably be anticipated that fictitious claims would be asserted abroad against Americans who for business or pleasure had visited foreign countries, and would become established claims by default of defense which a party wrongfully charged could not afford to make." The facts of that case, it is true, only called for an expression of opinion as to a judgment rendered against a nonresident on service outside of the jurisdiction, but the reasoning is quite pertinent to like service upon a resident; for if, under the laws of Iowa, a citizen may be required to return here in order to defend a suit on being served with notice abroad, then such of our citizens as may properly in the ordinary course of their business be in California, the Philippines, or Canada may be required to make defense here even in petty suits to avoid personal judgments against them by default, although they might be sued where they temporarily reside, and notwithstanding the fact that under provisions usually found in statutes of limitation the period of their absence from the state would not be computed in determining whether the cause of action had become barred. As quite pertinent

in this view and supporting our conclusion, see *De La Montanya v. De La Montanya,* 112 Cal. 101; *Smith v. Grady,* 68 Wis. 215; *Anheuser-Busch Brew. Co. v. Peterson,* 41 Neb. 897; *Moss v. Fitch,* 212 Mo. 484 (dissapproving *Hamill v. Talbott,* 72 Mo. App. 22, 81 id. 210).

What we conceive to the true rule is stated in Story, Conflict of Laws, section 539 (a passage quoted in many of the cases which we have cited and in our own cases of *Weil v. Lowenthal,* 10 Iowa, 575, and *Lutz v. Kelly,* 47 Iowa, 307, as well as in *Pennoyer v. Neff,* hereinafter fully considered): "No sovereignty can extend its process beyond its own territorial limits to subject either persons or property to its judicial decisions. Every exercise of authority of this sort beyond this limit is a mere nullity and incapable of binding such person or property in any other tribunals."

The same rule is thus stated in Cooley, Constitutional Limitations (7th Ed.) 582: "No state has authority to invade the jurisdiction of another, and by service of process compel parties there resident or being to submit their controversies to the determination of its courts;" and, in the same connection, this statement is made (page 583): "Due process of law would require appearance or personal service before the defendant could be personally bound by any judgment rendered." This last form of announcing this rule is quoted also in *Pennoyer v. Neff.*

In England it has been held, notwithstanding statutory provisions for service of notice on absent defendants, that a personal judgment thus rendered in another country against a person not there resident will be given no effect by the courts of England. *Schibsby v. Westenholz,* L. R. 6 Q. B. 154.

Now, conceding for the sake of argument, that the courts of England or of France would under pertinent statutory provisions sustain a personal judgment against a resident on service made abroad (as to which something

is said *arguendo,* but little or nothing by way of decision
in English cases), we have the further question whether,
under out constitutional limitations, such a judgment is
valid in a state of this Union which has attempted to give
its courts authority· on such service to render personal
judgment upon notice to such absent defendant. For, as
already indicated, the cases we have discussed relate to the
validity of such judgments when called in question in an-
other state, and not to their validity in the state where ren-
dered; and the judgment which is attacked in the pres-
ent proceeding is a judgment in the very court in which
its validity is now questioned. Here arises a difficulty which
could not have been involved in the English cases and is
not passed upon in the cases already cited; that is, the
proposition that a personal judgment against a defendant,
not served with process or notice within the territorial
limits of the state, is contrary to the constitutional re-
quirements of due process of law.

Since the adoption of the fourteenth amendment to
the federal Constitution in 1868, this question has fre-
quently been presented to the Supreme Court of the United
States with reference to the validity of such judgments
in different states, and the leading case on the subject is
that of *Pennoyer v. Neff,* 95 U. S. 714 (24 L. Ed. 565),
in which the question was whether a personal judgment
rendered in Oregon, in pursuance of service under statu-
tory · provisions of that state, on a defendant who was
not then within the limits of the state, was valid in such
sense as to sustain the sale of his property on execution.
The court refers to cases in· which judgments which could
not have been enforced outside the state had been held
valid in the state, but says that such a view is expressed
less frequently than formerly, "it beginning to be consid-
ered, as it ought always to have been, that a judgment
which can be treated in any state of the Union ·as con-
trary to the first principles of justice and an absolute

nullity because rendered without any jurisdiction of the court over the party, is not entitled to any respect in the state where rendered." It is true, the defendant was a nonresident of Oregon, but the court, in holding the judgment to be invalid because not within the scope of due process of law expressly refuses to base its decision on that ground, for, in quoting the language of the same court in *Cooper v. Reynolds,* 10 Wall. 308 (19 L. Ed. 931), in which it was expressly said without reference to the residence of the defendant against whom the judgment called in question had been rendered, that a defendant who was not within the territorial jurisdiction could not "be served with any process by which he can be brought personally within the power of the court," says: "The fact that the defendants in that case fled from the state or had concealed themselves so as not to be reached by the ordinary process of the court, and were nonresidents, was not made a point of discussion. The opinion treated them as being without the territorial jurisdiction of the court; and the grounds and extent of its authority over persons and property were considered, when they were not brought within its jurisdiction by personal service or voluntary appearance."

It is plain therefore that whatever is said in *Pennoyer v. Neff,* with reference to whether a personal judgment against a defendant not served with process or notice within the state and not entering an appearance or otherwise voluntarily conferring jurisdiction upon the court, is intended to be applicable alike to cases of residents and nonresidents, and these expressions of view leave no possible doubt in our minds as to what the Supreme Court of the United States would hold as to the validity of the judgment now before us. The court says (at page 723 of 95 U. S. (24 L. Ed. 565)): "The authority of every tribunal is necessarily restricted by the territorial limits of the state in which it is established. Any attempt to ex-

ercise authority beyond its limits would be deemed in every other forum, as has been said by this court, an illegitimate assumption of power and be resisted as mere abuse." And again (at page 726 of 95 U. S. (24 L. Ed. 565)); "If, without personal service, judgments *in personam* obtained *ex parte* against nonresidents and absent parties upon mere publication of service which, in the great majority of cases, would never have been seen by the parties interested could be upheld and enforced, they would be the constant instruments of fraud and oppression." And again (at page 727 of 95 U. S. (24 L. Ed. 565)): "Process from the tribunals of one state can not run into another state and summon parties there domiciled to leave its territory, and to respond to proceedings against them. Publication of process or notice within the state where the tribunal sits can not create any greater obligation upon the nonresident to appear. Process sent to him out of the state and process published within it are equally unavailing in proceedings to establish a personal liability." And again (at page 733 of 95 U. S. (24 L. Ed. 565)): "Since the adoption of the fourteenth amendment to the federal Constitution, the validity of such judgments may be directly questioned and their enforcement in the state resisted, on the ground that proceedings in a court of justice to determine the personal rights and obligations of parties over whom that court has no jurisdiction do not constitute due process of law."

After the statement of these propositions, the court proceeds to consider some apparent exceptions to or necessary qualifications of its general language. But although it had already directed its attention to the possible distinction between the case of a resident and that of a nonresident served outside of the state, it does not make any qualifications whatever as to the case of a resident. And we are therefore satisfied that what is said as to due process of law is intended to be applicable to any personal

judgments rendered on service had without the state, irrespective of residence or citizenship of the defendant thus served. The statute under consideration contemplated personal judgment on service alike on residents or non-residents by publication, or by actual service outside the state in certain classes of cases, and, as clearly stated in the dissenting opinion, the conclusion of the majority "is based upon the theory that the Legislature has no power to pass the law in question; that the principle of the statute is vicious and every proceeding under it void. It therefore affects all like cases, past and future, and in every state."

The broad view which is expressed in *Pennoyer v. Neff* is unequivocally reiterated in *Harkness v. Hyde,* 98 U. S. 476 (25 L. Ed. 237), in which this language is used: "There can be no jurisdiction in a court of a territory to render a personal judgment against any one upon service made outside its limits. Personal service within its limits, or the personal appearance of the defendant, is essential in such cases."

This opinion has gone much beyond the limits which the arguments of counsel would warrant, for the reason that there is involved the constitutionality of a provision found in our statutes, and some of the members of this court have entertained a reasonable doubt as to the conclusion which ought to be reached. We have now no hesitation, however, in announcing our conclusion that a state can not by providing for personal service outside of its territorial limits authorize its courts to render personal judgment against a defendant thus served. The judgment in the proceedings for the appointment of a guardian of the property of this plaintiff, predicated upon service of notice upon him in South Dakota, was therefore void, and the trial court erred in not so holding.

The action of the lower court in refusing on plain·

tiff's petition in equity to set aside such judgment as void is therefore *reversed*.

DEEMER, J. (dissenting).—This case is so important in its results that, while I am not prepared to dissent from the final conclusion in so far as this particular case is concerned, I am very doubtful about the argument used in support of the opinion and fearful of the results which may follow. The majority hold that in no case can an absent defendant be brought into court and personal judgment rendered against him, no matter what his residence or domicile. Again, the majority hold, as I understand it, that an original notice under our practice is in the nature of process, and that it is of no efficacy if served outside the state. If this be true, then service outside the state is of no efficacy whatever, even where the court has jurisdiction of the *res*. In such cases some sort of notice to the defendant must be given to constitute due process of law, and if the majority opinion is to prevail, no judgment heretofore rendered in attachment, divorce, and other proceedings *in rem*, where service was made outside the state, is of any validity, for process outside the state is ineffective for any purpose whatever. We have several times held that an original notice is not a process of court. *Nichols v. Burlington Road Co.*, 4 G. Greene, 42; *Klingel v. Palmer*, 42 Iowa, 166. If this be not true, then it follows that there can never be personal service of notice without the state. I am aware that as a matter of first impression nearly every lawyer will say that no personal judgment can be rendered upon service by publication, or any other form of constructive service, and such was my view when the case was first stated; but in looking up the authorities I found it necessary to modify my views, and I am now of opinion that the majority are carrying the rule too far and that there is no necessity for declaring three separate statutes of

this state, some of which have been in effect for more than fifty years, unconstitutional and void. The majority will concede, I think, that the opinion adopted by them entirely nullifies and renders void paragraph 7 of section 3534, sections 3537 and 3800, of the Code. These sections read as follows:

"Service may be made by publication, when an affidavit is filed that personal service can not be made on the defendant, within this state, in either of the following cases:

"7. In all actions where the defendant, being a resident of the state, has departed therefrom, or from the county of his residence, with intent to delay or defraud his creditors, or to avoid the service of a notice, or keeps himself concealed therein with like intent." Code, section 3534.

"Actual personal service of the notice within or without the state supersedes the necessity of publication." Code, section 3537.

"No personal judgment shall be rendered against a defendant served by publication only who has not made an appearance; but a personal judgment may be rendered against a defendant whether he appears or not, who has been served in any mode provided in this Code other than by publication, whether served within or without this state, if such defendant is a resident of the state." Code, section 3800.

Courts should hesitate long before declaring any statute unconstitutional. Such power is a delicate one and should never be exercised, except where no doubt exists as to the excess of legislative authority. The simple question, as I view it, is this: Can the Legislature provide for constructive or substituted service of notice upon a resident of this state, who is temporarily absent therefrom, of a purely personal action? With the "full faith and credit" clause of the federal Constitution (article 4)

we have nothing to do at this time. The only question is, Is it competent for the Legislature to provide for constructive or substituted service of notice upon a resident of the state, who is temporarily absent, of purely personal actions? If it may, then there is due process of law, and the majority are wrong in their conclusions. My doubts of the correctness of the majority opinion first arose when I called to mind the rule everywhere prevailing that the state has plenary power to prescribe how its citizens and residents shall be brought into its courts. It may undoubtedly provide for posting of notices, notice by registered letter, notice by publication, or other form of constructive service upon residents of the jurisdiction. It may also provide for substituted service upon both residents and nonresidents, and as to residents such service is good, although the person to whom the notice is addressed may be temporarily absent from the state. The reason for this is that every subject or citizen of a country where legal proceedings are instituted owes allegiance to his country and submission to its laws. He impliedly consents to be bound by its laws so long as he remains a citizen and resident, and when the state enacts a statute with reference to procedure every citizen of necessity consents thereto, and no matter where he may be does not change that assent until he renounces his former allegiance and in fact becomes a nonresident. These principles are, I think, fundamental. See *McCauley v. Fulton,* 44 Cal. 355; *U. S. Trust Co. v. Ins. Co.,* 18 N. Y. 199; *Barkman v. Hopkins,* 11 Ark. 157; *Betancourt v. Eberlin,* 71 Ala. 461; *Fleming v. West,* 98 Ga. 778 (27 S. E. 157); *Bickerdike v. Allen,* 157 Ill. 95 (41 N. E. 740, 29 L. R. A. 782); *Bardwell v. Anderson,* 44 Minn. 97 (46 N. W. 315, 9 L. R. A. 152, 20 Am. St. Rep. 547); *Hunt v. Hunt,* 72 N. Y. 217 (28 Am. Rep. 129); *Sturgis v. Fay,* 16 Neb. 429 (79 Am. Dec. 440); *Hamill v. Talbott,* 72 Mo. App. 22; *Henderson v. Staniford,* 105 Mass.

504 (7 Am. Rep. 551); *Martin v. Burns,* 80 Tex. 676 (16 S. W. 1072); *In re Denick,* 92 Hun 161 (36 N. Y. Supp. 518); *Ouseley v. Lehigh Valley Co.* (C. C.) 84 Fed. 602; *Hinckley v. Kettle River Co.,* 70 Minn. 105 (72 N. W. 835); *Bernhardt v. Brown,* 118 N. C. 700 (24 S. E. 527, 36 L. R. A. 402); *Cassidy v. Leitch,* 2 Abb. N. C. (N. Y.) 315.

We have affirmed this doctrine in *Lyman v. Plummer,* 75 Iowa, 353, and *Johnson v. Board,* 148 Iowa, 539, recently decided by this court, and it is so fundamental that I need not take the time to cite other authorities. Following this doctrine to its final conclusion it has been held in many cases that constructive or substituted service of notice upon a citizen and resident is sufficient basis for a personal judgment and constitutes due process of law, although at the time of service the defendant was temporarily out of the state. See *Botna Valley Bank v. Silver City Bank,* 87 Iowa, 479; *Knowles v. Gaslight Co.,* 86 U. S. 58 (22 L. Ed. 70); *Galvin v. Dailey,* 109 Iowa, 332; *Beard v. Beard,* 21 Ind. 321; *Thouvenin v. Rodrigues,* 24 Tex. 468; *Buford v. Kirkpatrick,* 13 Ark. 33; *Nunn v. Sturges,* 22 Ark. 389; *Mitchell v. Garrett,* 5 Houst. (Del.) 34; *Huntley v. Baker,* 33 Hun (N. Y.) 578; *Fernandez v. Casey* (decided May 27, 1890) 77 Tex. 452 (14 S. W. 149); *Harryman v. Roberts,* 52 Md. 64.

The distinction between constructive and substituted service upon residents and nonresidents is very fundamental. In the one case the resident consents to the state law; is subject to the jurisdiction of the state and amenable to its laws, especially those relating to service of process. It becomes important then to determine what is due process of law. In settling this inquiry we should assume, I think, that if, before the adoption of the Constitution or before the adoption of the fourteenth amendment, we find that personal judgment might have been

rendered upon constructive or substituted service of no-
tice upon a resident of a state or country while temporarily
absent therefrom, and such judgment were regarded as
binding not only by our own courts, but by the courts
of England from time immemorial, then such service
should be regarded as due process of law.   With this in
mind I have gone to the English cases and find that the
English courts have sustained what were called the Scotch
horning judgments, as in *Douglass v. Forrest,* 4 Brigh.
686, 1 Moore &·P. 663.   That decision was pronounced in
the year 1828.   Again, in *Becquet v. McCarthy,* 2 Barn.
& ·Ad. 951, decided in 1831, ' the English court held:
"That a law of a British colony requiring that in a suit
instituted against an. absent party the process should be
served upon the king's attorney general in the colony, it
not being expressly provided that the attorney general
should communicate with the absent defendant, was not
so contrary to natural justice as to render void a judgment
obtained against a party who had resided within the juris-
diction of the court at the time when the cause of action
accrued, but had withdrawn himself before the proceed-
ings were commenced."

In *Schibsby v. Westenholz,* L. R. 6 Q. B. 155 (24
T. N. S. 93, 19 Week. Rep. 58), the court said: "If
the defendants had been at the time of the judgment
subjects of the country whose judgment is sought to be
enforced against them, we think that its laws would have
bound them.   Again, if the defendants had been at the
time when the suit was commenced resident in the ·coun-
try, so as to·have the benefit of its laws protecting them,
or as it is sometimes expressed, owing temporary alle-
giance to that country, we think that its laws would have
bound them.   If at the time when the obligation was con-
tracted the defendants were within the foreign country,
but left it before the suit was instituted, we should be in-
clined to think the laws of that country bound them."

See, also, as directly in point, *Vallee v. Dumergue,* 4 Exch. 290; *Chopin v. Adamson,* L. R. 9 Exch. 345; *Bank of Australia v. Mas,* 16 Q. C. 717 (15 Jur. 967).

In *Chopin's* case the court said: "It is not contrary to natural justice that a man who has agreed to receive a particular mode of notification of legal proceedings should be bound by a judgment in which that particular mode of notification has been followed, even though he may not have actual notice of them." This was said in a case where the matter of enforcing a French judgment was involved. In that case judgment had been rendered by a French court against a shareholder of a French company who was not a resident of nor domiciled in France, on process served in the manner prescribed by a French statute.

In *Bernhardt v. Brown,* 118 N. C. 700 (24 S. E. 527, 36 L. R. A. 402), the Supreme Court of North Carolina said: "There can be no question that the state has the right to prescribe that service upon parties residing here can be made by publication when such parties can not, after due diligence, be found, not only in those cases in which it can be averred by affidavit that they have departed this state, or have concealed themselves herein, with intent to defraud creditors or avoid service of summons, but also in cases where such intent can not be averred." See, also, cases cited in 2 Freeman on Judgments, section 589.

The Supreme Court of the United States has recognized the same doctrine in *Grover Machine Co. v. Radcliffe,* 137 U. S. 287 (11 Sup. Ct. 92, 34 L. Ed. 670). And upon the authority of that case a federal district court held a judgment against an absent defendant on constructive service good. See *DuPont v. Abel* (C. C.) 81 Fed. 534. I am also of opinion that the same doctrine is announced in *York v. State of Texas,* 137 U. S. 15 (11 Sup. Ct. 9, 34 L. Ed. 604). See, also, *Mexican R. R.*

*v. Pinkney,* 149 U. S. 203 (13 Sup. Ct. 859, 37 L. Ed.
699); *Kirkpatick v. Post,* 53 N. J. Eq. 591 (32 Atl.
267); *Goldey v. News 'Co.,* 156 U. S. 521 (15 Sup. Ct.
559, 39 L. Ed. 517). I admit, of course, that the mode
of service upon absent citizens and residents must be
reasonable and appropriate to the case, as is said in *Betan-
court v. Eberlin,* 71 Ala. 461, and *Harryman v. Roberts,*
52 Md. 65. But if it is, then a judgment on construc-
tive service against a citizen and resident, although at the
time temporarily absent from the state, is due process of
law. *Hinckley v. Railroad Co.,* 70 Minn. 105 (72 N. W.
835); *Bimeler v. Dawson,* 5 Ill. 536 (39 Am. Dec. 430);
*Bickerdike v. Allen,* 157 Ill. 95 (41 N. E. 740, 29 L.
R. A. 782).

Going to the text-books, I find that there is perfect
unanimity of opinion upon this matter. Mr. Freeman,
in the fourth edition of his work on Judgments, says
(section 570): "In relation to the extraterritorial effect
of a judgment procured against a person in the state of
his domicile, in an action in which he entered no appear-
ance, and in which the process was served constructively,
in accordance with the laws of the state, radical and irrec-
oncilable differences of opinion exist. In one case the
court said: 'We will treat the judgment not as void,
nor as conclusive, but simply as prima facie.' This is a
kind of middle ground, or compromise treatment of the
question; and, like most compromises, is probably less de-
fensible, upon principle, than either of the extremes be-
tween which it is placed. The position, however, which
seems to be the best sustained, both by reason and by
precedents, is that each state has the authority to provide
the means by which its own citizens may be brought be-
fore its court; that the courts of other states have no au-
thority to disregard the means thus provided; and finally,
that every judgment or decree obtained in a state against
some of its citizens, by virtue of a lawful, though con-

structive, service of process, should·be as obligatory upon such citizens in every other state as it is in the state whence it is taken. Nor is it destructive of the extraterritorial effect of a judgment based on constructive service that the defendant, being a citizen of the state, was temporarily absent therefrom. It is sufficient that he was, at the time, subject to the laws of the state and to the territorial authority of the court. Thus in a recent Massachusetts case, in which a judgment rendered in California was called in question, Wells, J., delivering the opinion of the Supreme Judicial Court, said: "The defendant was not in California when the suit was commenced against him there, nor at any time during its pendence. No service of process or notice was ever made upon him personally. He did not appear by counsel, or otherwise, nor assent to the judgment, which was rendered upon his default of appearance. But' he had been for a long time before that a citizen of California; the contract was made there; and that continued to be his legal domicile when the judgment was rendered. He was therefore, upon principles of international right, subject to the laws and to the jurisdiction of the courts of that state." And in section 127, he says: "The service of process need not be personal. To require it to be personal in all instances would be to deny justice in all cases where the party from whom it was due absented or concealed himself, or otherwise eluded the agents of the law. Each state may, doubtless, provide the mode in which the process of its courts may be served, provided the parties against whom it issues are not deprived of 'an opportunity to be heard respecting the justice of the judgment sought.' Therefore citizens and residents of a state may, if its laws so provide, be served with process by the publication thereof, or by leaving it at their usual place of abode, or in such other mode as the Legislature deems proper under the circumstances of the case, if it appears probable that it will advise

them of the proceedings against them and afford them an opportunity to defend. It is true that on such service no personal judgment can be rendered against one not a citizen or a resident of the state; but this result does not follow from the mode of serving process, but from the fact that he is not personally within the jurisdiction of the state, and can not by any means be required to appear in the courts."

Mr. Black, in his work on Judgments, says. (section 227): "It is a principle of law, too well settled to require the citation of authorities in its support, that the sovereignty of a state or country, for the judicial as well as other purposes, extends only to its own citizens, or resident aliens, or persons temporarily within its borders, and to property within its territory, but not to absent nonresidents. In many of our states, however, there are statutes authorizing the commencement of certain classes of actions by a merely constructive service of process, and these acts apply almost exclusively to proceedings against nonresidents. The validity of judgments rendered under them has been much in question before the courts, and principally in cases where a judgment so given in one state has been sought to be enforced in another. This aspect of the subject will be fully considered in the chapter on judgments of a sister state, to which the reader is referred. But there are certain divisions of the topic which must be treated in this connection. And first, a distinction must be carefully noted between the jurisdiction over the state's own citizens and that over aliens. Every sovereignty has plenary control over its own subjects, and it may authorize a judgment to be rendered against one of its citizens, upon a constructive notice only, and although he is temporarily absent from its dominions, and such a judgment must be everywhere recognized as valid and of binding force and effect. This much being premised, the contrary rule may be stated, viz., that a personal judgment (as

distinguished from an adjudication upon *status* or an adjudication which is substantially *in rem)* rendered against a nonresident upon a species of contructive service only, in an action to which he did not appear, is limited in its effects to the state or country where rendered, and elsewhere is a mere nullity. For example, while tax assessments may be enforced against the property liable, without regard to the residence of the owner, yet a statute attempting to make a nonresident property owner personally liable for assessments for local improvements is an attempt to take property without due process of law, and a personal judgment against such owner would be void. Again, in a suit to foreclose a mortgage or vendor's lien, where the defendant is a nonresident and is cited by publication only and does not enter an appearance, the court has no jurisdiction to render a personal judgment against him. And where, in an action for the specific performance of a contract for the conveyance of lands, defendant is served only by publication, the plaintiff can not recover damages for breach of the contract. Nor can a personal judgment for costs be rendered in an action for partition, as against nonresidents who were not served with process, except constructively, and who did not voluntarily appear. But if a nonresident defendant, being within the state, is there personally served with process, or if he appears in the action by a duly authorized attorney, in either case the court has jurisdiction over him and the subsequent judgment is universally to be regarded as valid." Section 907: "Each state has the right to prescribe by law how its citizens shall be brought into its court. And whatever conflict there may be in some of the earlier cases on the subject, we think it is now well settled that if process be served upon the defendant according to the laws of the state of which he is a resident, and judgment be afterwards rendered against him, such a judgment is as binding between the parties, in this state, when relied on as a bar to the

prosecution of a second suit, upon the same cause of action, as it is in the state where it was rendered." Consequently, if the defendant was subject to the jurisdiction of the state where the action was brought, and process was served upon him in accordance with its laws, as, by leaving a copy of the summons at his usual residence, the judgment is presumably valid, although he was in fact temporarily absent from the state. But it has also been held that the judgment is liable to be impeached in another state by proof that the defendant was not domiciled in the state where it was rendered, nor subject to its laws, or that the judgment is not valid according to those laws. And some few cases, in opposition to the view of the majority, hold that, even in the case of its own citizens or residents, a state can not rightly substitute a merely constructive service for actual personal citation.

That these learned text-writers were justified in stating these rules is apparent when we go to the authorities. I shall quote from a few of the opinions.

In *Hamill v. Talbott,* 72 Mo. App. 22, the court said: "Regarding the service as constructive or substituted service, it was a proceeding against a citizen of Ohio as the trial court has found and as the Ohio court must have adjudged, even though he was temporarily absent from Ohio at the time of service. Being a citizen of Ohio, that state had 'the right to prescribe by law how its citizens shall be brought into its courts,' it being now well settled that if process be served upon the defendant according to the laws of the state of which he is a resident and judgment be afterwards rendered against him, such judgment is as binding between the parties, in another state, when relied upon as a bar to the prosecution of a second suit, upon the same cause of action, as it is in the state where it was rendered. *Harryman v. Roberts,* 52 Md. 64; 2 Black on Judgments, section 907; *Gillespie v. Insurance Co.,* 12 Gray (Mass.) 201 (71 Am. Dec. 743);

*Biesenthall v. Williams,* 1 Duv. (Ky.) 329 (85 Am. Dec. 629); *Cassidy v. Leitch,* 2 Abb. N. C. (N. Y.) 315; *Huntley v. Baker,* 33 Hun (N. Y.) 578; *Beard v. Beard,* 21 Ind. 321. In the two cases last cited the distinction as to the effect of judgments rendered on constructive or substituted service is pointed out. That distinction is that which arises from the citizenship of the party sought to be charged by the judgment. If he is, a citizen of the state at the time of the service he is amenable to the laws of such state. In *Huntley v. Baker,* it was said that it had been repeatedly held in England that the doctrine that judgments were without extraterritorial effect, except founded on personal service, is not applicable when the person so sought to be charged is a subject or citizen where and at the time the proceedings are taken, and when they are in conformity to the statute there, although the person may be then absent from the country, and that is put upon the ground that the person domiciled there owes allegiance to the country and submission to its laws. And therefore a judgment may in such case be rendered against and charge a defendant *in personam* without any personal service upon or actual notice to him, and in his absence from the country. But if the party sought to be charged was not a citizen of the state when the process upon which the judgment is founded is served, the rule just stated would not apply."

In *Cassidy v. Leitch,* 2 Abb. N. C. (N. Y.) 315, that court said: "The defendant, as has been said, was domiciled in Louisiana, and owed allegiance to that state, and submission to its laws. The manner of serving process must necessarily be regulated by every country for itself; and if a state permits process to be served upon one of its own citizens by the leaving of it in his absence at his domicile with an adult member of his household, that method of service is not so repugnant to the principles of natural justice that a foreign tribunal should refuse to recognize it

and treat a sentence founded on it as a nullity. 3 Burge, Foreign and Colonial Laws, 1056. · A foreign judgment, rendered against a citizen of the state in which it was pronounced, stands on a very different footing from a foreign judgment against one who owed no allegiance to and was not subject to the jurisdiction of the state in which it was rendered. The distinction is . perfectly well settled. In the case of *Duflos v. Burlington,* 34 Law Times Reports, 688, the defendant in an action on a French judgment, pleaded, as the defendant pleads in this suit, that he was not served with process, nor had he notice of the alleged action in France, or the opportunity of defending himself according to the rules and practice of the French courts. The plea was held bad by the Court of Queen's Bench, because it did not show that the defendant was not a Frenchman, not domiciled in France. In *Maubouquet v. Wyse,* 1 Irish Reports (Common-Law Series) 471, in an action on a French judgment, the defendant pleaded that he was absent from France at the beginning and during the entire progress of the French suit, that he was never served with summons, and that he had no notice or knowledge of the suit or any of its proceedings. The court pronounced the plea to be bad, because the defendant might have been resident in France, or might have had property there, or might, through an agent, have been served with process. In *Cowan v. Braidwood,* 1 M. & F. 882, the defendant pleaded to an action on a Scotch judgment that he was not within the jurisdiction of the Scotch court at the commencement of the action nor afterwards, nor did he know of the proceedings, or any of them, so that he could employ an attorney, nor did he appear. The plea was held bad; Tindal, C. J., saying that the plea ought to have alleged that the defendant was not a resident of Scotland, or that he had no property in Scotland. Marsh, J., said that defendant ought to have alleged that the Scotch judgment was not binding in Scotland, or that it

was against natural justice. To the same effect is *Vallee v. Dumergue,* 4 Ex. 290. In order to make the answer in this case sufficient, there should be added to it allegations showing that the defendant was not domiciled in Louisiana or subject to the laws of that state, or that the judgment is not binding there, or that it is contrary to natural justice. As a plea in bar, the answer is fatally defective."

In *Harryman v. Roberts,* 52 Md. 64, the Supreme Court said: "It is essential, of course, to the validity of every judgment, that the parties to be bound should have notice of some kind, either actual or constructive. Every one is entitled to his day in court, and to the right of being heard before a judgment of any kind is rendered against him. But it is not always necessary that personal process shall be served upon him. Each state has the right to prescribe by law how its citizens shall be brought into its courts. And whatever conflict there may be in some of the earlier cases on the subject, we think it is now well settled, that if process be served upon the defendant according to the laws of the state of which he is a resident, and judgment be afterwards rendered against him, such a judgment is as binding between the parties, in this state, when relied on as a bar to the prosecution of a second suit, upon the same cause of action, as it is in the state where it was rendered. *Price v. Hickok,* 39 Vt. 292; *McRae v. Mattoon,* 13 Pick. (Mass.) 53; *Poorman v. Crane,* Wright (Ohio) 347; *Joiner v. Hill,* S. C. 439; *Hunt v. Lyle,* 8 Yerg. (Tenn.) 142; *Green v. Sarmiento,* Pet. C. C. 74 (Fed. Cas. No. 5,760); *Rangely v. Webster,* 11 N. H. 299."

In *Biesenthall v. Williams,* 1 Duv. (Ky.) 329, the court said:

The right of each state to prescribe the manner and by what legal remedies its own citizens shall seek redress

of their wrongs, is sovereign and unlimited, save by that clause of the national Constitution prohibiting the states from passing laws which may impair the obligation of contracts. The Legislature of this state, and perhaps of all the states of the Union, have provided for the rendition of personal judgments without personal service of process in some special class of cases. A personal judgment may be rendered in behalf of the commonwealth on a recognizance upon the return of two notices, and a personal judgment may be rendered in behalf of a private person, 'in all that class of cases wherein judgment on motion is authorized by law, upon notice executed by leaving a true copy at the defendant's usual place of abode, with a white member of his family over sixteen years of age residing with him, when the defendant is absent. The power to enact these laws, and to render judgment accordingly, has been so long acquiesced in without remonstrance or resistance by the entire profession and people of our state, as to indicate their universal assent to its constitutional existence. This court seemingly approved its existence in *Williams v. Preston*, 3 J. J. Marsh. (Ky.) 602 (20 Am. Dec. 179). And in *Scott et al. v. Coleman*, 5 Litt. (Ky.) 350 (15 Am. Dec. 71), it held that whilst the general principle of the common law is that process must be executed else the judgment would be invalid, yet to this rule there were many exceptions by statutory or local regulations; and as the different state governments 'may and do institute such proceedings, it is competent for them to make judgments rendered therein conditionally binding or conclusively final or incontestable.'

The reasoning of the court is so potent in *Huntley v. Baker*, 33 Hun (N. Y.) 578, that although this decision was by a supreme court, I here quote what was said in the opinion:

· It will be observed that the summons was not served on the defendant personally. And it appears that at the time of the constructive service (and is so found by the referee) he was not in the state of Wisconsin, nor was he afterward in that state until after the judgment was rendered, and had no actual knowledge of the action or of

the judgment until about the time this action was commenced, the latter part of December, 1881. It does, however, appear that constructive service of the summons, as evidenced by the return in the record, was in accordance with the direction of the statute of that state. It is clear that unless some relation of the defendant to the state of Wisconsin rendered such constructive service of the summons effectual to permit a judgment against him *in personam*, the judgment rendered there must be deemed without jurisdiction and void, for it seems repugnant to the first principles of justice to charge a party personally with a judgment, rendered without any actual notice to him or appearance on his part. *Kilburn v. Woodworth*, 5 Johns. 37 (4 Am. Dec. 321); *Robinson v. Ward*, 8 Johns. 90 (5 Am. Dec. 327); *Borden v. Fitch*, 15 Johns. 121, 142 (8 Am. Dec. 225); *Noyes v. Butler*, 6 Barb. 613, 617; *Phelps v. Baker*, 60 Barb. 107; *Ferguson v. Crawford*, 70 N. Y. 261 (26 Am. Rep. 589). The courts of any state or country can have no extraterritorial jurisdiction so as to give notice, serve process, or charge persons or property beyond their respective boundaries. And when thus unable to acquire jurisdiction of the person against whom legal proceedings are by statute authorized, and nominally taken without actual service on him, the proceedings can be treated as *in rem* only in respect to property within the jurisdiction. But it has been repeatedly held in England that this doctrine is not applicable when the person so sought to be charged by judgment is a subject or citizen of the country where and at the time the proceedings are taken, and when they are in conformity to the statute there, although the person be then absent from the country, and that is put upon the ground that the person domiciled there owes allegiance to the country and submission to its laws. *Douglass v. Forrest*, 4 Bing. 686; *Becquet v. McCarthy*, 2 Barn. & Ad. 941; *Bank of Australasia v. Nias*, 16 Q. B. (Ad. & Ell.) 717; *Same v. Harding*, 9 C. B. (M., G. & S.) 661; *Vallee v. Dumergue*, 4 Exch. 290; *Meeus v. Thellusson*, 8 Exch. 638; *Copin v. Adamson*, L. R. 9 Exch. 345, s. c. 10 Moak, 492. And therefore a judgment may in such case be rendered against and charge a defendant *in personam*, without any personal service upon or actual notice to him, and in his absence

from the country. There are only a few reported cases in this country where that proposition has been considered. In the United States Supreme Court a question somewhat analogous was decided in like manner as applied to the United States. *Lafayette Insurance Company v. French,* 18 How. 404 (15 L. Ed. 451), approved in *St. Clair v. Cox,* 106 U. S. 356 (1 Sup. Ct. 354, 27 L. Ed. 222); *Pennoyer v. Neff,* 95 U. S. 714, 722, 735 (24 L. Ed. 565). And in this state this proposition is stated, and the English cases cited with apparent approval. *Gibbs v. Queen Ins. Co.,* 63 N. Y. 114, 126 (20 Am. Rep. 513); *Hunt v. Hunt,* 72 N. Y. 218, 238 (28 Am. Rep. 129); *Cassidy v. Leetch,* 53 How. Prac. 108, 109. Without stating the principle more at length, it may be assumed that by reason of the relation between the state and its citizen, which affords protection to him and his property and imposes upon him duties as such, he may be charged by judgment *in personam,* binding on him everywhere as the result of legal proceedings instituted and carried on in conformity to the statute of the state, prescribing a method of service which is not personal and which, in fact, may not become actual notice to him. And this may be accomplished in his lawful absence from the state. It therefore becomes important to inquire whether the state of Wisconsin was the domicile of the defendant at the time the constructive service of the summons was made there, because it is upon domicile that his civil status depended. *Udny v. Udny,* L. R. 1 H. L. (Scotch and Divorce App. Cases) 441; *Abington v. N. Bridgewater,* 23 Pick. (Mass.) 176.

These same principles are announced in many of the other cases cited by Black and Freeman, but as they all proceed upon the same theory no further quotations are deemed necessary. See, however, *Happy v. Mosher,* 48 N. Y. 313; *Orcutt v. Ranney,* 10 Cush. (Mass.) 183; *McRae v. Mattoon,* 13 Pick. (Mass.) 53; *Holt v. Alloway,* 2 Blackf. (Ind.) 108.

Without reference to the merits of the particular case now before us, I think I am justified in expressing the gravest doubts regarding the conclusions of the majority,

that no personal judgment can be rendered against a citizen and resident of this state temporarily absent therefrom, although that absence be for the very purpose of avoiding service unless he be personally served with notice, and that this service must be within the limits of the state. I am sure that no case cited by the majority so holds, and am very certain that *Pennoyer v. Neff,* so strongly relied upon by the majority, announces no such doctrine. Everything said by the majority in that case which in any manner so indicates is purely *dictum,* as I think the majority of this court now admit. I am not convinced by the majority opinion of this court that the various statutes of this state providing for constructive or substituted service upon citizens and residents of this state, but temporarily absent therefrom, are each and all unconstitutional and void. The tenor of all the authorities, as I read them, and so far as I have had opportunity to consult them, is the other way. I concede that the question is a nice one and that as a matter of first impression most lawyers would say these statutes are perhaps unconstitutional, but I am nevertheless constrained, after an examination of the question in the light of all the authorities at hand, to say there is so much doubt about the matter that the quesiton should be left to the final arbiter in such matters, to wit, the Supreme Court of the United States. I am very firmly of opinion that in any event we should save that section of the statute relating to personal service upon nonresidents in actions *in rem* or *quasi in rem.* Of course, if notice under our system of procedure is, as the majority say, process which can not run into another state, then notices so served in proceedings *in rem* or *quasi in rem* are of no validity whatever, and countless judgments in this state must be held invalid and absolutely void for want of jurisdiction in the court rendering them. I am quite persuaded, too, that the statute allowing service by publication upon residents of this

state, who absent themselves for the very purpose of avoiding service and defeating and defrauding creditors, should be sustained. I believe, too, that personal judgment obtained against one absent from the state who is notified by substituted service, as upon a member of his family, is good and that to this extent, at least, section 3800 should be preserved. It is singular that no one has thought to challenge these sections until this late day. They have passed through the hands of three code commissions, each of which was composed of able lawyers and judges, and no one of these has ever suggested any trouble with them.

As already suggested, I am not objecting to the final conclusion. Indeed, I think I see a way in which the same result can be reached without overturning the statutes in question. As I can not make my Brethren see it in this light, I am doubtless wrong, and I may also be entirely wrong in my doubts regarding the unconstitutionality of the acts in question. Duty, however, seems to call for an expression of individual opinion on the matter, and in view of what has been said by courts and text-writers, I am constrained to put these doubts in writing, to the end that the full effect of the decision of the majority may not be overlooked. I make bold to do this for the reason that no court, so far as I have been able to find, has gone to the extent which the majority find it necessary to go in this case. I shall not advert to the supposed hardship arising or which may arise from an opinion upholding the statutes in question, for I think the results of the majority opinion may be quite as harmful as a contrary conclusion. The majority opinion points out the way whereby a resident of the state, having no real property therein, may go to another state for the purpose of avoiding service, taking his personalty with him, and thus defeat his creditors by finally pleading the statute of limitations. It is well known, of course, that if defendant be

a resident of the state, his temporary absence therefrom does not toll the statute of limitations.

This opinion has already outgrown proper limits, and I conclude by saying that I am in so much doubt about the correctness of the majority opinion that I can not at·this time join with my Brethren in holding the statutes in question unconstitutional.

I am authorized to say that Mr. Chief Justice SHERWIN joins in this dissent.